[No. A113760. First Dist., Div. One. Apr. 16, 2008.]

ANGELA M. BRADSTREET, as Labor Commissioner, etc., Plaintiff and Appellant, v.
ANNA WONG et al., Defendants and Respondents.

[No. A114106. First Dist., Div. One. Apr. 16, 2008.]

ANGELA M. BRADSTREET, as Labor Commissioner, etc., Plaintiff and Appellant, v.
ANNA WONG et al., Defendants and Respondents;
YAN FANG MEI, Intervener and Appellant.

COUNSEL

Department of Labor Standards Enforcement and David Balter for Plaintiff and Appellant.

Women's Employment Rights Clinic, Marci Seville, Doris Ng, Hina B. Shah and Nira Geevargis for Intervener and Appellant.

Corporate Counsel Law Group and John Chu for Defendants and Respondents.

OPINION

STEIN, J.—These consolidated appeals are from a judgment entered in favor of Anna Wong, Toha Quan, and Jenny Wong, as the owners, officers, or managers of several garment manufacturing corporations. The complaint filed by the California Labor Commissioner (Commissioner or Labor Commissioner), and a complaint in intervention filed by the Chinese Progressive Association and two former employees, alleged a variety of statutory and common law bases for holding defendants personally liable for numerous Labor Code violations arising out of a period in 2001 when the businesses they owned started to experience financial difficulty, and the employees were either paid late, or not at all. The complaint in intervention also alleged a cause of action for violation of Business and Professions Code section 17200, and sought an order requiring defendants to personally pay the wages owed by the corporations as restitution.

We shall affirm the judgment.

## FACTS

Toha Quan and Anna Wong, husband and wife, owned the capital stock, and served as corporate officers or directors, of three San Francisco garment manufacturers, Wins of California (WCA), Wins Fashion, and Win Industries of America (collectively, Wins Corporations), all of which were closely held corporations doing business since the 1980's and early 1990's. Defendants were also the managers and operators of these garment factories. Jenny Wong performed bookkeeping and payroll work for the three corporations and served on the board of directors of one or more of them. The management, manufacturing, and sales activities of the Wins Corporations were interrelated and integrated.

For several months in the summer of 2001, the Wins Corporations failed to meet payrolls, and to pay suppliers and other expenses. During this period,

defendants told employees of the Wins Corporations that there was inadequate cash to meet the payroll, but that the employees would eventually be paid. Defendants issued checks to some employees but told them they could not yet be cashed, or issued only pay stubs that defendants stated could be used to verify the amounts owed when cash became available. Defendants encouraged the employees "to continue working without pay until the Wins Corporations collected slow-paying accounts receivable and stabilized their finances."

When employees began to complain about the failure of the Wins Corporations to pay their wages, the Division of Labor Standards Enforcement (DLSE) and the United States Department of Labor (DOL) took action. The DOL filed suit in the United States District Court against the Wins Corporations and defendants in their personal capacity seeking, among other things, injunctive relief that resulted in the closing of the Wins Corporations, and the seizure of assets and accounts receivable. The DOL notified all customers that the Wins Corporations had been closed down, and invoked a "lock-box" procedure that required all customer payments to go to the DOL. These actions "made it impossible for the Wins Corporations to consummate a previously approved $1,000,000 bank loan," forcing them to declare bankruptcy.[1] In reliance upon federal labor law that permits, in some circumstances, holding corporate principals personally liable for wages not paid by the corporate employer, the DOL obtained a stipulated judgment against defendants for approximately $500,000.

In the meantime, the Commissioner paid wage claims of the Wins Corporations employees from an account established pursuant to Labor Code section 2675.5.[2] A portion of the annual registration fee paid by garment manufacturers is deposited in this account to ensure the payment of wages and benefits to workers in the garment industry. Pursuant to sections 98.3 and 1193.6, the Commissioner then filed the instant lawsuit seeking to hold defendants personally liable for unpaid wages owed to the employees of the Wins Corporations.[3] The Commissioner sought liquidated damages for unpaid minimum wages and overtime (§ 1194.2), unpaid vacation pay (§ 227.3) and penalties for bad payroll checks (§ 203.1). The Commissioner also sought waiting time penalties for failure to pay wages due at the time of termination (§ 203) and for failure to pay wages at the times specified in section 204, and penalties

---

[1] The court found that, in the summer of 2001, at the time of the DOL takeover, the Wins Corporations had accounts receivable in the approximate amount of $1 million. As of the time of trial the DOL had not accounted to the DLSE or to defendants regarding collection of those accounts.

[2] Further statutory references are to the Labor Code unless otherwise noted.

[3] The Commissioner and the individual employees must reimburse the garment fund with any wages recovered in this case. (§ 2675.5, subd. (a).)

pursuant to section 210 that are recoverable in an action by the Commissioner and payable to the State Treasurer.

As the legal basis for imposing personal liability on defendants, the Commissioner's original complaint relied exclusively on a provision in the Industrial Welfare Commission (IWC) wage order applicable to the garment industry that defines "employer" as: "[A]ny person as defined in Section 18 of the Labor Code, who directly or indirectly, or through an agent or any other person, employs or exercises control over the wages, hours, or working conditions of any person" (Cal. Code Regs., tit. 8, § 11010, subd. 2(F); hereafter the IWC employer definition). The Commissioner alleged that defendants employed or exercised control over the wages, hours, and working conditions of the Wins Corporations employees and therefore were personally responsible for Labor Code violations arising out of the failure of the corporations to pay wages.

In February 2004, the Commissioner amended the complaint to allege additional factual and legal bases for imposing personal liability on defendants. The Commissioner's amended complaint alleged that defendants had so abused the corporate entity and the limited liability it provides that they should be deemed the alter egos of the Wins Corporations. It further alleged that defendants were guarantors for the wages not paid by Wins Corporations because they are "persons" as defined in section 2671, subdivision (a), and were "deemed employers" within the meaning of section 2677.

The Chinese Progressive Association and two former employees, Yan Fang Mei and Li Qin Yang Zhou, obtained the court's permission to file a complaint in intervention, which they also later amended. The two former employees alleged claims for the same unpaid minimum wages, overtime, and penalties sought by the Commissioner, and alleged the same bases alleged in the Commissioner's amended complaint for holding defendants personally liable. In addition, the Chinese Progressive Association alleged violations of many of these same Labor Code sections as predicate violations for a cause of action pursuant to Business and Professions Code section 17200, also known as the unfair competition law (hereafter UCL). The UCL claim sought restitution from defendants to the two named former employees and all the other former employees of the Wins Corporations, consisting of the wages owed but not paid by the Wins Corporations.

The matter was tried to the court, and it issued a tentative decision holding defendants personally liable for $1 million in unpaid wages and vacation pay, and imposed statutory waiting time penalties pursuant to section 203. It also held that the failure to pay wages constituted an unfair business practice under the UCL. Although it did not order payment of wages as restitution, it

did tentatively order defendants to pay another $25,900 in penalties pursuant to Business and Professions Code section 17206.

The court stated that its final decision was contingent upon the outcome of a then pending California Supreme Court case, *Reynolds v. Bement*, review granted July 23, 2003, S115823, because the court had based its finding of personal liability for corporate violations of the Labor Code upon application of the IWC employer definition that includes a person who "exercises control over the wages, hours, or working conditions." The court specified that the UCL claim was "derivative" of the Labor Code violations, and therefore the final determination as to that cause of action also was contingent on the pending decision.

After the California Supreme Court filed its decision in *Reynolds v. Bement* (2005) 36 Cal.4th 1075 [32 Cal.Rptr.3d 483, 116 P.3d 1162] (*Reynolds*), the trial court asked for additional briefing, and ultimately filed a detailed statement of decision, and entered judgment in defendants' favor. The trial court interpreted *Reynolds* to preclude the application of the IWC employer definition to the alleged Labor Code violations. It found that under the common law definition, the employers were the Wins Corporations, not defendants, and defendants therefore were not personally liable for the unpaid wages and penalties.

The court further held that plaintiff had failed to prove any factual grounds to " 'pierce the corporate veil.' " The court found defendants did not make personal use of corporate assets, or commingle personal and corporate assets, and that the Wins Corporations were not inadequately capitalized. It found that defendants had "put far more personal funds into the corporations in the form of capital infusions and loans than were alleged to have been improperly taken out." It also reasoned that the mere fact that the Wins Corporations ultimately " 'went broke' " did not establish that the corporations were undercapitalized. The court found that the Wins Corporations had "successfully made a profit and paid their bills for over a decade," had weathered "financial ups and downs consistent with the brutal competition, local and foreign, in the sewing factory business," and had "provided steady employment to hundreds of workers for many years." It found "no evidence whatsoever" that "their final lack of funds prior to bankruptcy and closing was due to [undercapitalization or] a desire to use the company as a fraudulent enterprise." Rather, major factors for the final "cash crisis" were the failure of major customers "such as Wal-Mart, J.C. Penney's and Target" to pay for goods, and Wal-Mart's refusal to accept and pay for a large order. The court concluded: "Having operated as successful corporations for well over a decade, meeting the substantive requirements of corporations, the Wins

Corporations cannot justly be stripped of corporate status and the principals made personally liable because they failed to survive a hostile business climate."

The court also held defendants could not be held personally liable under statutory provisions specifically applicable to the garment manufacturing business, either as a wage guarantor under section 2673.1, or a deemed employer under section 2677. With respect to section 2673.1, the court held that employees could enforce the guaranty only by filing an administrative claim with the Commissioner, and they had failed to do so. Moreover, although the Commissioner is authorized to commence suit on the employees' behalf, the court found the Commissioner had failed to follow required notice and other statutory procedures. It also held defendants were not personally liable under section 2677 based upon the fact that another corporation defendants owned and operated, Tomi, Inc., had contracted with an unregistered Wins corporation.

The court denied the Commissioner's motion for leave to amend to recover under section 558, which specifically allows recovery of civil penalties for violation of the wage laws, including failure to pay wages, from "[a]ny employer *or other person acting on behalf of an employer.*" (§ 558, subd. (a), italics added.) The court found that the Commissioner had made a tactical decision not to amend to include section 558 before trial when such a request would have been timely.[4]

Finally, the court held defendants were entitled to judgment in their favor with respect to the Business and Professions Code section 17200 cause of action alleged by the Chinese Progressive Association, and the two named former employees of the Wins Corporations, on behalf of themselves and the other employees of the Wins Corporations.[5] Among other reasons, the court held the monetary relief plaintiffs sought, i.e., an order requiring defendants to pay the wages owed by the Wins Corporations, was not an available remedy in a private action under the UCL, because defendants had not personally obtained any money or property from the plaintiffs.[6]

The Commissioner and one of the plaintiffs in intervention, Yan Fang Mei, filed timely notices of appeal.

---

[4] The Commissioner does not seek review of this ruling.

[5] The court noted that under Proposition 64, plaintiffs' action on behalf of other employees was barred, but that it need not reach the question whether it had retroactive effect, since defendants were entitled to judgment on other grounds.

[6] The court also did not award the penalties pursuant to Business and Professions Code section 17206 that it had announced in its tentative decision. Such penalties are available only in a public action. (*Korea Supply Co. v. Lockheed Martin Corp.* (2003) 29 Cal.4th 1134, 1148 [131 Cal.Rptr.2d 29, 63 P.3d 937] (*Korea Supply*) ["[T]he Legislature did not intend to authorize courts to order monetary remedies other than restitution in an individual action."].)

DISCUSSION

## I.

## Introduction

There is no dispute that during 2001 the Wins Corporations failed to pay earned wages and accrued vacation pay when, due to a variety of factors, these corporations went out of business and declared bankruptcy. The issue is whether defendants, as the shareholders, officers, or managing agents of the Wins Corporations, may be held personally liable for the many violations of the Labor Code that occurred when these employees were not paid, and the corporations went out of business.

On appeal, neither the Commissioner nor intervener Yan Fang Mei (intervener) challenges the sufficiency of the evidence to support the court's factual findings and legal conclusions that there were no grounds to find defendants were the alter egos of the Wins Corporations. Nor does either appellant challenge the court's conclusion that defendants could not be held liable as wage "guarantors," pursuant to section 2673.1.

The Commissioner's sole contention on appeal is that the court incorrectly concluded that the common law definition of "employer" applies to an action brought pursuant to section 1193.6. He argues that the court should instead have applied the IWC employer definition to hold defendants personally liable for the alleged Labor Code violations arising out of the Wins Corporations' failure to pay wages.

Intervener contends that the court erred in concluding that defendants could not be held personally liable for unpaid wages as deemed employers within the meaning of section 2677. She also argues that the court erred in concluding that under the UCL the remedy intervener sought, i.e., restitution of the unpaid wages, could only be imposed upon the Wins Corporations, as the employer for whom the services were performed, not upon defendants as individuals.

## II.

## Personal Liability Under IWC Wage Order Definition of Employer

In *Reynolds, supra,* 36 Cal.4th 1075, an employee of two corporate defendants engaged in the automobile painting business filed a complaint

pursuant to section 1194 as a class representative. The complaint alleged various causes of action based upon the failure to pay overtime compensation in violation of section 510, and violations of other Labor Code sections. (36 Cal.4th at p. 1083.) In addition to naming the corporate defendants, the plaintiff sought to hold several shareholders, officers, or directors of the corporations personally liable under the IWC employer definition contained in the IWC wage order applicable to the automobile painting industry. The complaint alleged that these individuals " 'employed or exercised control over wages, hours, or working conditions,' " and therefore were personally and jointly liable for the corporations' alleged violations of the Labor Code. (*Id.* at pp. 1082–1083.) The trial court sustained a demurrer filed by the individual defendants, on the ground that they were not employers as defined by common law, and the IWC definition did not apply. When the plaintiff declined to amend as to some causes of action, the court entered judgment in favor of the individual defendants.

Our Supreme Court held that the IWC definition did not apply to hold corporate control figures liable for the failure of the corporation to pay overtime, and affirmed. The court first noted that the plain terms of the IWC employer definition did not "expressly impose liability under section 1194 on individual corporate agents." (*Reynolds, supra*, 36 Cal.4th at p. 1086.) Since neither section 510 nor section 1194 defines the terms "employer" or "employee," the applicable rule of statutory interpretation is that these terms should be construed in accordance with the common law, unless the Legislature clearly and unequivocally indicated otherwise. (36 Cal.4th at pp. 1086–1087.) "Under the common law, corporate agents acting within the scope of their agency are not personally liable for the corporate employer's failure to pay its employees' wages . . . regardless of whether the corporation's failure to pay such wages, in particular circumstances, breaches only its employment contract or also breaches a tort duty of care." (*Id.* at p. 1087, citations omitted.)

The court found the fact that the Legislature had amended sections 510 and 1194 several times since the IWC first promulgated its definition of "employer" in 1947 did not evidence an intent to depart from the common law by incorporating the IWC definition into these statutes. (*Reynolds, supra*, 36 Cal.4th at pp. 1086–1087.) The court reasoned, "Had the Legislature meant in section 1194 to expose to personal civil liability any corporate agent who 'exercises control' over an employee's wages, hours, or working conditions, it would have manifested its intent more clearly than by mere silence after the IWC's promulgation . . ." of the employer definition in a wage order. (*Id.* at p. 1088.)

The *Reynolds* court also rejected the Commissioner's argument in an amicus curiae brief that failure to adopt the plaintiff's theory of corporate

agent liability would threaten the DLSE's administrative practice of applying the IWC employer definition in administrative proceedings (see §§ 98, 98.3), and interpreting it in accordance with the federal decisions under the FLSA (Fair Labor Standards Act of 1938; 29 U.S.C. § 201 et seq.). In dicta, the court initially noted "that the DLSE's administrative policies are not due general interpretive deference unless they are promulgated in accordance with the Administrative Procedure Act," and that differences between federal and state wage and hour law may render reliance on interpretation of federal law inapposite. (*Reynolds, supra,* 36 Cal.4th at p. 1088.) The court was not persuaded that the Commissioner's ability to recover wages on behalf of California employees would be hampered by its decisions because individual corporate agents could be held liable under other established common law or statutory theories.[7] The court further noted that pursuant to section 558, subdivision (a), a person " 'acting on behalf of an employer' " could be subject to penalties equal to the amount of unpaid wages, and that section 2699, subdivision (a) authorizes employees in some circumstance to bring civil actions to collect these penalties. (36 Cal.4th at p. 1089 & fns. 10, 11, 12.)[8]

■ In this case, the Commissioner relies upon the same IWC employer definition at issue in *Reynolds* to impose personal liability upon defendants for the wages not paid by the Wins Corporations, in violation of sections 200,

---

[7] As an example, the court cited a case recognizing the alter ego doctrine. It also cited section 2673.1, a statutory provision specifically applicable to the garment manufacturing industry that establishes an administrative procedure for holding a "person" who contracts with another "person" in the garment manufacturing business liable for minimum wages and overtime as a "guarantor." (*Reynolds, supra,* 36 Cal.4th at p. 1089, fn. 11.) In this case, the Commissioner did seek to impose liability on defendants pursuant to section 2673.1, but does not challenge the trial court's determination that recovery was barred because the Commissioner failed to follow the notice and other procedures required under that section. Neither the Commissioner nor intervener challenges the court's conclusions regarding liability under section 2673.1. Nor do they challenge the court's findings and conclusions that defendants were not the alter egos of the Wins Corporations.

[8] In a concurring opinion, Justice Moreno appealed to the Legislature to amend these labor statutes to define "employer" in a manner that parallels the definition under the Fair Labor Standards Act. (See 29 U.S.C. § 203(d).) To illustrate the necessity for such an amendment, he described the practice of using the corporate form to play a "shell game" in which an employer faced with a large wage judgment closes down one corporation and starts up another. (*Reynolds, supra,* 36 Cal.4th at pp. 1092–1095.) In the appropriate case, abuse of the privileges of operating as a corporate entity can be addressed by application of the alter ego doctrine. Some existing statutes also address the problem Justice Moreno describes, by imposing successor liability where a corporation primarily engaged in sewing and assembly of garments simply goes out of business to evade liability, and then reopens as a new corporation. (See § 2684.) Moreover, the fund created by section 2675.5 provides some protections for employees whose wages are unpaid when the corporation they work for goes out of business without assets. It is for the Legislature to determine whether these common law and statutory protections are enough, or whether it should act to amend the Labor Code along the lines Justice Moreno suggests.

201, 202, and 204, and for vacation pay not paid, in violation of section 227.3. Like section 510, these sections impose obligations on the "employer," but the term is not statutorily defined. The Commissioner brought the action pursuant to section 1193.6.[9] Section 1193.6, like section 1194, uses the term "employee" but does not define it. We therefore are left with the same basic issue of statutory interpretation identified in *Reynolds, supra,* 36 Cal.4th 1075, i.e., that neither the term "employer" nor the term "employee" is statutorily defined in the substantive Labor Code provisions that were allegedly violated. Therefore, absent a clear and unequivocal expression of contrary legislative intent, we must assume the Legislature intended these terms would be interpreted in accordance with the common law.

The Commissioner argues that *Reynolds, supra,* 36 Cal.4th 1075, is distinguishable because the judicial proceedings were initiated by *employees* pursuant to section 1194, whereas here, the *Commissioner* filed suit on the employees' behalf pursuant to section 1193.6. The Commissioner contends the reference in section 1193.6 to "orders of the commission" is a clear and unequivocal expression of intent to incorporate the IWC employer definition into section 1193.6, and into the substantive Labor Code sections the Commissioner contends were violated. Unlike section 1194, which was enacted in 1937 (Stats. 1937, ch. 90, § 1194, p. 217), *prior* to the adoption of the IWC employer definition, section 1193.6 was enacted in 1961 (Stats. 1961, ch. 408, § 2, p. 1479), long *after* the IWC promulgated its definition. The Commissioner argues the Legislature must be presumed to have been aware of the IWC employer definition when it enacted section 1193.6, and therefore the reference to "the orders of the commission" evinces a clear and unequivocal intent that the IWC employer definition apply to impose liability on corporate agents or control figures for unpaid wages in actions brought under section 1193.6. (See, e.g., *People v. Harrison* (1989) 48 Cal.3d 321, 329 [256 Cal.Rptr. 401, 768 P.2d 1078] [Legislature is "deemed to be aware of statutes and judicial decisions already in existence, and to have enacted or amended a statute in light thereof"].)

In *Jones v. Gregory* (2006) 137 Cal.App.4th 798 [40 Cal.Rptr.3d 581] (*Jones*), the Court of Appeal rejected a similar argument made by the Commissioner in an effort to distinguish *Reynolds, supra,* 36 Cal.4th 1075. In *Jones,* the Commissioner obtained a judgment against a corporate owner for

---

[9] Section 1193.6, subdivision (a) provides: "The department or division may, with or without the consent of the employee or employees affected, commence and prosecute a civil action to recover unpaid minimum wages or unpaid overtime compensation, including interest thereon, owing to any employee under this chapter or the orders of the commission, and, in addition to these wages, compensation, and interest, shall be awarded reasonable attorney's fees, and costs of suit. The consent of any employee to the bringing of this action shall constitute a waiver on the part of the employee of his or her cause of action under Section 1194 unless the action is dismissed without prejudice by the department or the division."

unpaid overtime, and the owner appealed, contending that he could not be held personally liable. (*Jones*, at p. 800.) The Commissioner argued "that while '[n]either section 510 nor section 1194 contains any reference to the IWC employer definition' [citation], section 98.3, subdivision (b), expressly provides: 'The Labor Commissioner may prosecute action[s] for the collection of wages and other moneys payable to employees or to the state arising out of an employment relationship *or order of the Industrial Welfare Commission.*' " (*Id.* at p. 806.) The court held the mere statutory reference to the orders of the IWC in section 98.3 did not evince any legislative "intent to make substantive changes to the Labor Code by importing IWC orders in whole or in part. [Citation.] . . . While section 98.3 authorizes the Labor Commissioner to prosecute civil actions in addition to pursuing administrative relief, nothing in section 98.3 purports to modify the substantive terms of the Labor Code. [¶] Moreover, section 98.3 is untethered to any particular statutory wage requirement, so *Reynold*'s observation remains true that the IWC employer definition 'does not expressly impose liability under section 1194 [or any other Labor Code provision] on individual corporate agents.' [Citation.] In other words, if the Legislature had 'intended to depart from the common law by engrafting Wage Order No. 9 [or a similar IWC regulation] onto section 1194 [or other statutory provision], it would have more clearly manifested that intent.' [Citation.]" (*Jones*, at pp. 806–807.)

■ Although we would caution against reading the narrow holding in *Reynolds, supra*, 36 Cal.4th 1075, as a categorical decision that *all* provisions of the Labor Code using the term "employer" or "employee" must be interpreted in accordance with the common law definitions, we shall conclude, for reasons similar to those stated in *Jones, supra*, 137 Cal.App.4th 798, that the mere reference in section 1193.6 to "the orders of the commission" does not evince a clear and unequivocal legislative intent to depart from the established common law meaning of these terms.

First, the plain language of section 1193.6 does not support the Commissioner's construction because the phrase "orders of the commission" does not modify, qualify or otherwise define the word "employee." Instead, it modifies "unpaid minimum wages or unpaid overtime compensation" that are owed "under this chapter or the orders of the commission." The reference to the "orders of the commission" merely makes explicit that, in addition to statutory provisions of "this chapter," the IWC orders contain regulations establishing overtime exemptions (§ 515) and fixing the minimum wage (§ 1197) that are relevant to determining whether minimum wages and overtime compensation are "ow[ed]" (§ 1193.6).

Second, both before and after the enactment of section 1193.6, when the Legislature has intended to deviate from the common law that insulates

corporate agents from personal liability for obligations or duties imposed on the corporate employer, it has done so explicitly. For example, section 1199, enacted in 1937, imposes misdemeanor criminal liability on "[e]very employer *or other person acting either individually or as an officer, agent, or employee of another person*" for violation "of this chapter or any order or ruling of the commission." (Stats. 1937, ch. 90, § 1199, pp. 217–218, italics added.) Section 1175, also enacted in 1937, imposes criminal liability on "[a]ny person, *or officer or agent thereof.*" (Stats. 1937, ch. 90, § 1175, p. 214, italics added.) The Legislature continued to use similar language when, in 1983, it enacted section 1197.1, to specify that a civil penalty for minimum wage violations may be imposed on "[a]ny employer or *other person acting either individually or as an officer, agent, or employee of another person. . . .*" (Stats. 1983, ch. 1145, § 1, p. 4347, italics added; see also § 1199.5 ["Every employer or other person acting either individually or as an officer, agent, or employee of another person" is guilty of a misdemeanor for certain violations].) The absence of any similar language in section 1193.6 further bolsters our conclusion that the mere reference to "orders of the commission" does not evince any legislative intent to deviate from the common law meaning of "employer" or "employee."

■ We also note that section 1197.1, like section 1193.6, includes a reference to "an order of the commission." If the mere reference to "an order of the commission" meant the Legislature intended the term "employer" to include a corporate employer's agents, the phrase "or other person acting either individually or as an officer, agent, or employee of another person" would be unnecessary surplusage. (See *People v. Cole* (2006) 38 Cal.4th 964, 980–981 [44 Cal.Rptr.3d 261, 135 P.3d 669] [statutes should not be construed to render a part surplusage].)

■ In the absence of a clear and unequivocal expression of a contrary legislative intent, we conclude that section 1193.6, and the Labor Code sections that the Commissioner alleged were violated by the failure of the Wins Corporations to pay wages and vacation pay, must be interpreted in light of the common law definition of "employer." (*Reynolds, supra,* 36 Cal.4th at pp. 1086–1087.) The trial court correctly concluded that, under the common law definition, the Wins Corporations, not defendants, were the employers liable for the alleged violations of the Labor Code arising out of the failure of the Wins Corporations to pay its employees.

## III.

### Personal Liability as a "Deemed Employer" Pursuant to Section 2677

Intervener contends that the court erred in rejecting the alternative theory that defendants could be held personally liable for all the alleged Labor Code violations arising out of the Wins Corporations' failure to pay employees, as "deemed" employers pursuant to section 2677.

█ Section 2677 is part of a system of registration, bonding requirements, and other regulations that address certain abuses that arise due to the structure of the garment industry. The basic problem is that garment manufacturers and retailers often receive the benefits of cheap labor, but are shielded from liability as the "employers" for labor violations because they contract production work to independent contractors, who in turn hire unskilled immigrant laborers, and force them to work in violation of the minimum wage and overtime law. (See Goldstein et al., *Enforcing Fair Labor Standards in the Modern American Sweatshop: Rediscovering the Statutory Definition of Employment* (1999) 46 UCLA L.Rev. 983, 997–998.) In 1980, the Legislature enacted Senate Bill No. 545 (1979–1980 Reg. Sess.), which contained a series of laws addressing some of these abuses by requiring "every person engaged in the business of garment manufacturing" to register with the Labor Commissioner (§ 2675; Stats. 1980, ch. 633, § 1, pp. 1731–1733.) The Legislature also enacted section 2677, which makes "[a]ny person engaged in the business of garment manufacturing who contracts with any other person similarly engaged who has not registered" a "deemed . . . employer" and jointly liable for violation of section 2675, and certain wage and hour sections enumerated in section 2675, subdivision (a). In 1999, as part of a series of amendments intended "to protect garment workers from the hardships and misery of 'sweatshop' labor," the Legislature added subdivision (b) to section 2677.[10] (*Fashion 21 v. Coalition for Humane Immigrant Rights of Los Angeles* (2004) 117 Cal.App.4th 1138, 1151–1152 [12

---

[10] The Senate Rules Committee analysis described the problems these amendments sought to address as follows: "Supporters state that retailers and manufacturers create the sweatshops, but shield themselves from legal responsibility for the illegal conditions on the grounds that the workers are employed by an independent contractor. One in three contractors close down each year. When back pay is assessed against them, they often go out of business leaving workers unpaid." (Sen. Rules Com., Off. of Sen. Floor Analyses, 3d reading analysis of Assem. Bill No. 633 (1999–2000 Reg. Sess.) as amended Sept. 8, 1999, p. 7.)

The trial court found the evidence was "uncontroverted" that the "Wins Corporations provided excellent, safe working conditions; that the defendants operated their corporations continuously for over ten years; and that they did not close down and then open in new locations with new names, as the statute sought to prevent. [Defendants] did not operate 'sweatshops.' "

Cal.Rptr.3d 493] (*Fashion 21*).)[11] Section 2677, subdivision (b) authorizes employees of an unregistered garment manufacturer to file a civil action against the deemed employer to recover wages, damages and penalties "because of a violation by the unregistered person." (§ 2677, subd. (b).)

The factual premise for intervener's theory of liability pursuant to section 2677 was that defendants also were the sole owners of the stock, and managers, of a Utah garment manufacturing company, Tomi, Inc. During the period when the Wins Corporations started to experience financial difficulties, the DLSE denied WCA's application for renewal because WCA had failed to pay payroll taxes and WCA continued to operate without a registration. Nevertheless Tomi, Inc., continued to do business with WCA, an unregistered garment manufacturer, until late summer 2001. Plaintiffs contended the foregoing evidence established that defendants, through their ownership of Tomi, Inc., continued to do business with WCA when it was not registered, and therefore defendants as *individuals* may be deemed employers of WCA's employees pursuant to section 2677 and held jointly liable with WCA for the failure to pay its employees' wages.

The court held that intervener could not prevail on this theory. It found that *Tomi, Inc.,* not defendants as individuals, contracted with WCA as an unregistered garment manufacturer. Therefore, the court concluded, although Tomi, Inc., might qualify as a "deemed employer" within the meaning of section 2677, to hold defendants personally liable, intervener would have to prove that defendants were the alter egos of Tomi, Inc., and she had failed to do so.[12]

■ Intervener contends, and we agree, that the Legislature's use of the term "person" in section 2677 explicitly imposes liability on individuals or business entities who were not the "employer," by providing that, if the other statutory terms are met, a "person" may be *deemed* to be the employer. Indeed, extending liability beyond the employer is essential to the purpose of

---

[11] At the same time, the Legislature enacted section 2673.1, which, even in the absence of a violation of the registration requirements, makes garment manufacturers liable as a guarantor for payment of wages to employees of their contractors under certain circumstances. The court ruled that defendants were not liable as wage guarantors under this section. That ruling is not challenged on appeal.

[12] The court also stated that "[t]he only credible evidence presented shows that the goods went to Wal-Mart and other retailers. Plaintiffs could theoretically sue Wal-Mart and other retailers who contracted for the goods under the above statutes, but there is no evidence that the individual defendants in this case violated them." In making this observation, the court relied upon the Commissioner's interpretation of "the term 'garment manufacturing' in Labor Code section 2671, subdivision (b) [as applying] not only to businesses which actually engage in garment making operations such as sewing, cutting, finishing and assembling but also to businesses which 'contract to have those operations performed,' " including retailers. (*Fashion 21, supra,* 117 Cal.App.4th at pp. 1151–1152.)

section 2677 to end the practice in the garment industry of manufacturers evading responsibility for certain labor violations from which they benefit because they are not the employers of an independent contractor's employees. Intervener also correctly states that a "person" includes an " individual . . . corporation . . . contractor[], . . . and any other person or entity engaged in the business of garment manufacturing" (§ 2671). Intervener, however, takes an unwarranted logical and factual leap when she asserts that since an "individual" *or* "corporation" may be deemed an employer, defendants are deemed employers because they as individuals owned and controlled Tomi, Inc. Intervener's argument fails to recognize the importance of the phrase "*who contracts with*" in section 2677 (italics added) that further defines the "person" who may be deemed an employer. Even if defendants as *individuals* were "person[s] . . . engaged in the business of garment manufacturing" within the meaning of section 2671, they could not be "deemed . . . employer[s]" of the WCA employees within the meaning of section 2677 unless they as individuals also were the persons "*who contract[ed] with*" an unregistered garment manufacturer, in this case WCA. The court found, as a matter of *fact,* that it was Tomi, Inc., not defendants, who contracted with WCA.[13] Therefore, under the plain terms of section 2677, *Tomi, Inc.,* could have been held liable as a "deemed employer" under section 2677, as the "person" who "contract[ed] with" WCA when it was not registered. We find nothing in the plain terms of section 2677 that also deems the owners, officers, or managers of the "person" who "contract[ed] with" the unregistered garment manufacturer to be employers. Therefore, the court correctly concluded that absent some basis for deeming defendants to be alter egos of Tomi, Inc., defendants could not be deemed employers within the meaning of section 2677.

The purpose of section 2677 is to end the practice of garment manufacturers reaping the benefits of Labor Code violations by contracting with an independent contractor, but shielding themselves from liability based on the fact that the independent contractor, not the contracting garment manufacturer, is the employer. This purpose is fully served by holding the contracting "person," be it an individual, association, partnership, limited liability company or corporation, liable for Labor Code violations committed by the unregistered independent contractor whose workers performed labor that benefited the contracting person. In the absence of express language including the officers, owners or managers of the "person" who contracts with the unregistered manufacturer, the extra step that intervener urges, imposing liability also on the individual shareholders or corporate officers of the contracting "person," is outside the legislative scheme. Of course, when the corporate entity that contracts with an unregistered manufacturer is abused by

---

[13] Indeed, intervener herself acknowledges in her opening brief that "Tomi, Inc. was the primary manufacturer that contracted with WCA."

individual owners or officers who disregard the separate status of the corporate entity and use its assets for their personal benefit, then the alter ego doctrine may be applied to also hold these individuals accountable. In this case, however, the court found no factual basis for "piercing the corporate veil" under the alter ego doctrine.

## IV.

### Recovery of Unpaid Wages Under the Unfair Competition Law

Intervener also alleged violations of sections 201, 202, 1182.11, 2926, 2927, 2677, and 2673.1 and of IWC wage order No. 1-2001 as the predicate statutes underlying a cause of action for violation of the UCL. She further alleged, and sought to prove, that defendants directly and actively participated in the alleged violations and therefore could be held individually liable under the UCL for unfair practices committed by the corporations. (See, e.g., *People v. Toomey* (1984) 157 Cal.App.3d 1 [203 Cal.Rptr. 642].) The remedy she sought was restitution of the unpaid wages.

The court did not make explicit findings on the issue whether defendants had directly and actively participated in the alleged violations. Instead, it determined, based upon the facts of the case, that the *remedy* intervener sought, i.e., restitution of the unpaid wages, could only be imposed upon the Wins Corporations as the employer for whom the services were performed, not upon defendants as individuals. Specifically, it found that defendants "obtained no money or gains from which to disgorge or pay restitution." Intervener contends that this was error, and that the court should instead have ordered defendants to pay the wages not paid by the Wins Corporations as restitution pursuant to Business and Professions Code section 17203.

■ Although it is well established that an owner or officer of a corporation may be individually liable under the UCL if he or she actively and directly participates in the unfair business practice, it does not necessarily follow that all of the remedies imposed with respect to the corporation are equally applicable to the individual. "While the scope of conduct covered by the UCL is broad, its remedies are limited. [Citation.] A UCL action is equitable in nature; damages cannot be recovered. [Citation.] Civil penalties may be assessed in public unfair competition actions, but the law contains no criminal provisions. [Citation.] . . . [U]nder the UCL, '[p]revailing plaintiffs are generally limited to injunctive relief and restitution.' " (*Korea Supply*, *supra*, 29 Cal.4th 1134, 1144.) "[T]he Legislature did not intend to authorize courts to order monetary remedies other than restitution in an individual action." (*Id.* at p. 1148.)

■ There is no dispute that, if defendants directly and actively participated in an unfair business practice, they could be subject to penalties pursuant to Business and Professions Code section 17206. Such penalties, however, are an available remedy only in a public action. (*Korea Supply*, *supra*, 29 Cal.4th at p. 1148.) Nor is there any dispute that the unpaid wages could be recovered from the Wins Corporations as restitution pursuant to Business and Professions Code section 17203. ■ "[A]n order that a business pay to an employee wages unlawfully withheld is consistent with the legislative intent underlying the authorization in [Business and Professions Code] section 17203 for orders necessary to restore to a person in interest money or property acquired by means of an unfair business practice." (*Cortez v. Purolator Air Filtration Products Co.* (2000) 23 Cal.4th 163, 178 [96 Cal.Rptr.2d 518, 999 P.2d 706].) "The *employer* has acquired the money to be paid by means of an unlawful practice that constitutes unfair competition as defined by [Business and Professions Code] section 17200. The employee is, quite obviously, a 'person in interest' [citation] to whom that money may be restored. The concept of restoration or restitution, as used in the UCL, is not limited only to the return of money or property that was once in the possession of that person. The commonly understood meaning of 'restore' includes a return of property to a person from whom it was acquired [citation], but earned wages that are due and payable pursuant to section 200 et seq. of the Labor Code are as much the property of the employee who has given his or her labor *to the employer* in exchange for that property as is property a person surrenders through an unfair business practice. An order that earned wages be paid is therefore a restitutionary remedy authorized by the UCL. The order is not one for payment of damages." (*Id.* at pp. 177–178, italics added.)

The issue in the case before us is whether these defendants, who were *not* the employers, and who were not found to have required any employee to work for them personally, or to have misappropriated corporate funds for their own use, may also be required to pay the earned but unpaid wages as restitution.[14]

---

[14] Intervener Yan Fang Mei requested that this court take judicial notice of the indictment and jury verdicts, and in a second request of the judgment, in a federal criminal case, *United States v. Quan* (N.D.Cal., May 23, 2007, No. CR-04-0323) 2006 U.S.Dist. Lexis 67714. Intervener contends the records of these criminal proceedings are relevant to the UCL claim for restitution. We deferred ruling on these requests and now exercise our discretion to deny them for two reasons. First, the criminal proceedings commenced after the court entered judgment in this case, and therefore were not a part of the record below. The trial court did not consider them in making its factual findings or legal ruling, and defendants have had no opportunity to present evidence or argument on intervener's theory of factual and legal relevance. For this reason, "[r]eviewing courts generally do not take judicial notice of evidence not presented to the trial court." (*Vons Companies, Inc. v. Seabest Food, Inc.* (1996) 14 Cal.4th 434, 444, fn. 3 [58 Cal.Rptr.2d 899, 926 P.2d 1085]; see also *People v. Preslie* (1977) 70 Cal.App.3d 486 [138

 "[A]n order for restitution is one 'compelling a UCL defendant to return money [or earned wages for service performed] obtained through an unfair business practice to those persons in interest from whom the property was taken, that is, to persons who had an ownership interest in the property or those claiming through that person.'" (*Korea Supply, supra,* 29 Cal.4th at p. 1149.) The problem with requiring defendants, rather than the Wins Corporations, to pay unpaid wages as restitution is that the labor intervener performed was not for defendants personally, but for the employers, the Wins Corporations. Defendants did not personally obtain the benefit of those services, and the duty to pay wages was owed by the corporations as employers, not by defendants as owners, officers or managers. (See *Reynolds, supra,* 36 Cal.4th at p. 1087.)

Nor is this a case in which defendants "misappropriated to themselves, as individuals for their individual advantage, the unpaid wages" the Wins Corporations owed. (*Reynolds, supra,* 36 Cal.4th at p. 1090.) Although intervener cites evidence that she contends establishes defendants did take funds out of the Wins Corporations for their personal use, the court, as trier of fact, found that defendants did not personally obtain any "money or gains from which to . . . pay restitution." It resolved against intervener conflicts in the evidence on the issue of withdrawal of funds from the Wins Corporations for defendants' personal use. It found, instead, that defendants "put far more personal funds into the corporations in the form of capital infusions and loans than were alleged to have been improperly taken out. . . . [E]vidence indicated capital contributions and loans from Defendants to the corporations in excess of $1,000,000. These capital contributions and loans came largely toward the end of the Wins Corporations' existence in an unsuccessful effort to keep the corporations afloat."

 In the absence of a finding that intervener performed labor for defendants personally, rather than for the benefit of Wins Corporations, or that defendants appropriated for themselves corporate funds that otherwise would have been used to pay the unpaid wages, we agree with the trial court's conclusion that an order requiring defendants to pay the unpaid wages would not be "restitutionary as it would not replace any money or property that defendants took directly from" intervener. (*Korea Supply, supra,* 29 Cal.4th at p. 1149.) "[T]he notion of restoring something to a victim of unfair competition includes two separate components. The offending party must have obtained something to which it was not entitled *and* the victim must

Cal.Rptr. 828].) Second, we cannot determine from the face of the records submitted whether they are relevant on the issues intervener suggests. To determine relevance would require a detailed inquiry into the facts and contentions in this separate criminal proceeding. (See *Mitroff v. United Services Automobile Assn.* (1999) 72 Cal.App.4th 1230, 1243 [85 Cal.Rptr.2d 759] [court has discretion to deny request for judicial notice of court records where relevance depends upon detailed inquiry into facts and contentions in another judicial proceeding].)

have given up something which he or she was entitled to keep." (*Day v. AT & T Corp.* (1998) 63 Cal.App.4th 325, 340 [74 Cal.Rptr.2d 55].) Therefore, restitution is available where " 'a defendant has wrongfully acquired funds or property in which a plaintiff has an ownership or vested interest.' " (*Feitelberg v. Credit Suisse First Boston, LLC* (2005) 134 Cal.App.4th 997, 1012 [36 Cal.Rptr.3d 592].) Defendants cannot be required to return or restore to intervener something they never obtained. (See *Madrid v. Perot Systems Corp.* (2005) 130 Cal.App.4th 440, 456 [30 Cal.Rptr.3d 210] [noting absence of authority for proposition that "a UCL plaintiff may recover money from a defendant who never received it . . ."].) The intervener provided her labor *to the employer*, i.e., the Wins Corporations. The Wins Corporations, not their owners, officers or managers, owed the earned wages that became due and payable when the labor was performed. (See *Reynolds, supra*, 36 Cal.4th at p. 1087.) Not having acquired or directly and personally benefited from intervener's labor without paying for it, or having misappropriated for their personal use corporate funds that could have been used to pay her wages, defendants could not be required to pay the unpaid wages as restitution. Such relief would not be "restitutionary as it would not replace any money or property that defendants took directly from" intervener. (*Korea Supply*, at p. 1149.)

The cases upon which intervener relies do not compel a contrary conclusion. Although some of the cases uphold judgments holding corporate officers or owners individually liable under the UCL for unfair practices in which he or she actively and directly participated, none addresses the question whether the corporate officer or owner could be directed to return money or property to the plaintiff that the corporation had obtained through an unfair practice, but that the individual defendant had not personally obtained or misappropriated.

In *People v. Toomey, supra*, 157 Cal.App.3d 1 (*Toomey*), this court affirmed a judgment against a corporate owner and officer in an action alleging unfair and misleading business practices under the UCL brought on behalf of the public by the Attorney General. We upheld the finding of individual liability for unfair practices consisting of misleading advertising and solicitations of discount coupons based upon evidence that the corporate owner and officer actively and personally participated in the misleading advertising and sales solicitations even after an injunction against him as an individual and against his corporation had been issued pursuant to Business and Professions Code section 17535. In addition to ordering the owner to pay substantial civil penalties, the trial court also ordered him to pay restitution to purchasers of the coupons in the form of refunds. (*Toomey*, at pp. 7, 10.) The owner did challenge the restitution order, but only on the ground that it improperly required refunds even to purchasers who had not testified or shown actual reliance upon any misrepresentation. (*Id.* at pp. 25–26.) We therefore did not

analyze or address the question whether requiring the corporate owner or shareholder personally to pay the refunds to purchasers was a proper restitutionary remedy.[15]

Similarly, in *People v. Dollar Rent-A-Car Systems, Inc.* (1989) 211 Cal.App.3d 119 [259 Cal.Rptr. 191], the court upheld a finding of individual liability of a majority shareholder and officer of three car rental agencies for unfair practices consisting of selling a "collision damage waiver" to car rental customers without advising the customers of their limitations, and submitting false car repair bills to customers. (*Id.* at pp. 130–131.) The *remedy* imposed, however, consisted only of a large *civil penalty* and an injunction. (*Id.* at pp. 122–132.) The court therefore had no occasion to address the question whether, or under what circumstances, a restitution order directed against the corporation could also properly be imposed upon a majority shareholder, officer or manger as an individual.

Nor do the two federal decisions upon which intervener relies address the question of the availability under the UCL of restitution as a remedy against corporate officers or agents when the plaintiff's property or labor has been wrongfully appropriated by the corporation. In *Matoff v. Brinker Restaurant Corp.* (C.D.Cal. 2006) 439 F.Supp.2d 1035, the court held only that, under the UCL, restitution of tips the corporate employer had required servers to share with bartenders in violation of section 351 was an available restitutionary remedy *against the corporate employer.* The court reasoned that "[i]f Defendant unlawfully misappropriated Plaintiff's tips, Plaintiff may seek restitution even if Defendant directed the misappropriated funds to the bartenders." (*Matoff,* at p. 1038.) It did not address the question whether such relief would also be available against an individual shareholder, officer or manager. In *Newman v. Checkrite California, Inc.* (E.D.Cal. 1995) 912 F.Supp. 1354, 1372, the court merely held that an attorney who was the sole shareholder of a corporate law firm engaged in debt collection could have personal liability under the UCL "for the acts of his subordinates done in the normal course of business," and therefore was not entitled to summary judgment. It did not address the question whether, or what type of, monetary relief might be available as against the individual defendant. (*Newman,* at p. 1372.)

We conclude the remedy intervener sought under the UCL, consisting of an order requiring defendants to pay the unpaid wages the Wins Corporations owed to its employees, was not "restitutionary as it would not replace any

---

[15] We also note that the facts in *Toomey* were that there was no meaningful distinction between Toomey as an individual and his corporation. (See *Toomey, supra,* 157 Cal.App.3d at pp. 15, 16 & fn. 5 [the evidence showed Toomey was "in essence, the company"].) Here, by contrast, the court made explicit factual findings that there was no factual basis for finding defendants were the alter egos of the Wins Corporations.

money or property that defendants took directly from" intervener. (*Korea Supply, supra*, 29 Cal.4th at p. 1149.) The court therefore did not err by entering judgment in defendants' favor with respect to the UCL cause of action.

CONCLUSION

The judgment is affirmed.

Marchiano, P. J., and Swager, J., concurred.