**Jose CERVANTEZ, individually, on behalf of others similarly situated, and on behalf of the general public, Plaintiff,**

v.

**CELESTICA CORPORATION, Adecco USA, Inc., and Does 1–10 inclusive, Defendants.**

**No. EDCV 07–729–VAP (OPx).**

United States District Court, C.D. California.

July 30, 2008.

---

**227.** Complaint, ¶ 137.

**228.** *Id.*, ¶ 138.

**229.** *Id.*, ¶ 140.

**230.** Def.'s Mot. at 35.

Bryan J. Schwartz, Matthew C. Helland, Nichols Kaster, LLP, San Francisco, CA, Eric W. Cheung, Ervin Cohen and Jessup LLP, Beverly Hills, CA, James H. Kaster, Paul J. Lukas, Nichols Kaster and Anderson, Minneapolis, MN, for Plaintiff.

David F. Faustman, Lynne M. Hook, Fox Rothschild, Los Angeles, CA, Lucinda Odell Lapoff, Harter Secrest and Emery, Rochester, NY, Jesse Elijah Maram Randolph, Julie E. Patterson, Bryan Cave LLP, Irvine, CA, for Defendants.

## ORDER GRANTING MOTION FOR CLASS CERTIFICATION

VIRGINIA A. PHILLIPS, District Judge.

Plaintiffs' Motion for Class Certification came before the Court for hearing on June 30, 2008. After reviewing and considering all papers filed in support of, and in opposition to, the Motion, as well as the arguments advanced by counsel at the hearing, the Court GRANTS Plaintiffs' Motion for Class Certification.

## I. BACKGROUND

### A. Procedural History

Plaintiff Jose Cervantez filed a Complaint on June 15, 2007 on behalf of himself and others similarly situated, naming as Defendants Celestica Corporation and Adecco USA, Inc. On October 5, 2007, the Court granted Defendants' Motion to Strike the prayers for punitive damages in the Complaint.

On March 5, 2007, Plaintiffs Jose Cervantez, Rusty Reyes, George Santos, Maria Nguyen, and Marina Flores (collectively, "Plaintiffs") filed a Second Amended Complaint ("SAC") on behalf of themselves and others similarly situated, asserting five claims: (1) failure to pay overtime compensation in violation of California law; (2) waiting time penalties; (3) failure to provide accurate itemized wage statements; (4) failure to provide rest breaks and meal periods; and (5) unfair business practices.

Plaintiff filed this Motion to Certify Class ("Mot.") on May 1, 2008, with supporting declarations and exhibits. On June 2, 2008,

Defendant Adecco filed an Opposition ("Adecco Opp'n"), Objections ("Adecco Objections"), and supporting declarations and exhibits. Defendant Celestica filed an Opposition ("Celestica Opp'n") and supporting declarations and exhibits on June 2 and 4, 2008. Plaintiff filed a Reply and Responses to Defendant Adecco's Objections on June 16, 2008.

## B. Plaintiff's Allegations

Plaintiffs work at Defendant Celestica's shipping facility. (SAC ¶ 15.) Defendant Adecco is a temporary staffing agency that provides employees for Celestica. (*Id.* ¶ 10.)

Defendants require Plaintiffs to stand in line to pass through a checkpoint at the beginning and end of each shift. (*Id.* ¶ 16.) Plaintiffs spend 30 to 60 minutes waiting in checkpoint lines each day, and Defendants do not pay them for this time. (*Id.*)

Defendants regularly require Plaintiffs to work more than eight hours a day and fail to pay them for some or all of the hours worked over eight hours each day. (*Id.* ¶ 17.) Defendants regularly fail to provide thirty minute meal periods each day, fail to provide a second thirty minute meal period for Plaintiffs who work in excess of ten hours in a day, and fail to provide two paid rest breaks each day. (*Id.* ¶¶ 18–19.) Furthermore, Defendants do not pay Plaintiffs an additional hour of pay when Defendants deny Plaintiffs meal or rest periods. (*Id.* ¶ 20.)

## II. EVIDENTIARY OBJECTIONS

The Court does not address Defendant Adecco's objections to evidence on which the Court did not rely in the determination of this Motion, e.g., the Declarations of Espinoza, Orozco, etc.

Defendant Adecco objects to certain records attached to the Declaration of Helland and to the paragraphs of that Declaration which describe the records. (Adecco Objections at 4–5.) The Court does not address the objections to records and paragraphs not relied on in the determination of this Motion, i.e., the objections to paragraphs 4–5 and Exhibits B–D.

Defendant Adecco objects that paragraph 7 of the Declaration and Exhibit F attached thereto are irrelevant, speculative, conclusory, lack foundation, and lack personal knowledge. (Adecco Objections at 5.) Defendant Adecco does not explain the basis of its objections, but merely states them in a conclusory fashion. Exhibit F is a sample of timecard reports produced by Defendants. (*See* Helland Decl. ¶ 7.) Accordingly, the objections are overruled as to Exhibit F, which is clearly relevant and is an admission from Defendants' own records.

## III. LEGAL STANDARD

Under Rule 23(a), in order to bring a class action, a plaintiff must demonstrate:

(1) the class is so numerous that joinder of all members is impracticable;

(2) there are questions of law or fact common to the class;

(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

(4) the representative parties will fairly and adequately protect the interests of the class.

Fed.R.Civ.P. 23(a).

In addition to these prerequisites, a plaintiff must satisfy one of the prongs of Rule 23(b) in order to maintain a class action. Where, as here, a plaintiff moves for class certification under Rule 23(b)(3), the plaintiff must prove that:

the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

Fed.R.Civ.P. 23(b).

Class actions have two primary purposes: to further judicial economy by avoiding multiple suits and to protect the rights of persons who "might not be able to present claims on an individual basis." *Haley v. Medtronic, Inc.*, 169 F.R.D. 643, 647 (C.D.Cal.1996). The party seeking class certification bears the burden of demonstrating that it has met each of the four requirements of Rule 23(a) and at least one of the Rule

23(b) requirements. *Zinser v. Accufix Research Inst.*, 253 F.3d 1180, 1186 (9th Cir. 2001).

■ The Court acts as a fiduciary for the absent class members, and "must conduct an independent and rigorous analysis of the moving party's claims to examine whether the requirements of Rule 23 are met." *In re Paxil Litig.*, 212 F.R.D. 539, 543 (C.D.Cal. 2003) (quotations, citation omitted). In addition, to meet its burden the moving party " 'must provide facts to satisfy these requirements; simply repeating the language of the rules … is insufficient.' " *Id.* (quoting *Bates v. United Parcel Serv.*, 204 F.R.D. 440, 443 (N.D.Cal.2001)) (ellipsis in original).

## IV. DISCUSSION

Plaintiffs seek certification of two classes. The proposed "security line class" consists of

[a]ll current and former non-exempt employees of Defendants, paid by Defendant Adecco USA, Inc., who passed through security screening before, during or after their work shift, in Celestica's facility at 13473 Santa Ana Avenue, Fontana, California, since June 14, 2003.

(Reply at 1.) [1]

Plaintiffs propose a "meal and rest period class" consisting of

[a]ll current and former non-exempt employees of Defendants, paid by Adecco USA, Inc. who worked at Celestica's facilities at 13473 Santa Ana Avenue, Fontana, California and 1392 North Sarah Place, Ontario, California, and who were entitled to receive meal and/or rest periods, since June 14, 2003.

(*Id.*)

Defendant Celestica argues that both these class definitions are overbroad because (1) neither of the facilities started employing workers until after 2003; and (2) the term "non-exempt" is not precise or objective. (Celestica Opp'n at 12 (citing *O'Connor v. Boeing North American, Inc.*, 184 F.R.D. 311, 319 (C.D.Cal.1998) (requiring precise, objective, and ascertainable class definitions)).) That the class period starts in 2003, however, does not lessen the ascertainability of the class: it simply does not include members from dates when no employees existed. Contrary to Celestica's assertions, the term "non-exempt" is subject to a precise legal definition. *See Heffelfinger v. Electronic Data Systems Corp.*, 2008 WL 2444690, at *9–*10 (C.D.Cal.2008) (defining the term under both California law and the FLSA). Indeed, courts have approved class definitions using this term. *See, e.g., In re Wells Fargo Loan Processor Overtime Pay Litigation*, 2008 WL 2397424, at * 6–* 8 (N.D.Cal.2008).

Plaintiffs' proposed meal and rest period class definition is overbroad, however. The class must be defined to reflect the way in which the potential plaintiffs are alleged to be similarly situated and share common claims. The California Labor Code, under which Plaintiffs bring their meal and rest period claims, requires employers to provide meal and rest periods as mandated by the Industrial Welfare Commission. *See, e.g.,* Cal. Lab.Code § 226.7. Each plaintiff in the class, therefore, must allege a violation of these requirements.

The Court therefore amends the proposed class definition so that it reads as follows:

All current and former non-exempt employees of Defendants, paid by Adecco USA, Inc. who worked at Celestica's facilities at 13473 Santa Ana Avenue, Fontana, California and 1392 North Sarah Place, Ontario, California, and who, at any time since June 14, 2003, were not provided a

---

1. In their Motion, Plaintiffs sought certification of a security line class of "[a]ll current and former non-exempt employees of Defendants who passed through security screening before, during or after their work shift, in Celestica's facility at 13473 Santa Ana Avenue, Fontana, California, since June 14, 2003" and a meal and rest period class of "[a]ll current and former non-exempt employees of Defendants who worked at Celestica's facilities at 13473 Santa Ana Avenue, Fontana, California and 1392 North Sarah Place, Ontario, California, and who were entitled to receive meal and/or rest periods, since June 14, 2003." (Mot. at 1.) In their Reply, however, Plaintiffs withdrew their certification motion as to employees paid by Defendant Celestica and proposed the above class definitions which are limited to employees paid by Defendant Adecco. (*See* Reply at 1–2.)

meal or rest period to which they were entitled.

The claims of the purported meal and rest period class arise from three alleged aspects of Defendants' policies and facilities:

- failure to pay required premiums when employees are denied meal or rest breaks
- failure to provide a second meal period after ten hours of work; and
- failure to provide suitable resting facilities close to Plaintiffs' work stations.

(Mot. at 1; 6–9; Reply at 9–14.)

The claims of the purported security line class arise from Defendants' alleged policies and practices of:

- requiring employees to undergo security screening before clocking in for their shifts and after clocking out at the end of their shift;
- "shift rounding," in which time clocks automatically "erase employees' time when they arrive early or leave late, but record each minute that employees arrive late or leave early;" and
- manually altering employees' time records to delete time recorded for unapproved overtime.

(Mot. at 2–6.)

## A. Numerosity

■ In determining whether under Rule 23(a)(1), joinder of all members is "impracticable," courts have held that the plaintiff need not show that it would be "impossible" to join every class member. *Haley,* 169 F.R.D. at 647. Additionally, there is no specific number cut-off, as the specific facts of each case may be examined. *Ballard v. Equifax Check Servs., Inc.,* 186 F.R.D. 589, 594 (E.D.Cal.1999). Courts have not required evidence of specific class size or identity of class members to satisfy the requirements of Rule 23(a)(1). *Robidoux v. Celani,* 987 F.2d 931, 935 (2d Cir.1993).

■ Moreover, courts have held that "[w]here the exact size of the class is unknown but general knowledge and common sense indicate that it is large, the numerosity requirement is satisfied." *Orantes–Hernan-*

*dez v. Smith,* 541 F.Supp. 351, 370 (C.D.Cal. 1982). Courts have held that numerosity is satisfied when there are as few as 39 potential class members. *Patrick v. Marshall,* 460 F.Supp. 23, 26 (N.D.Cal.1978).

■ Here, Plaintiffs provide evidence that Defendant Adecco furnished approximately 3,965 non-exempt employees to work at Celestica's Fontana facility during the period relevant here. (Helland Decl. Ex. G, Defendant Adecco USA, Inc.'s Response to Interrogatories ("Adecco Interrogatories") at 11.) Before the start of each shift, Defendant Celestica requires all of those employees to undergo security screening before clocking in to work and after clocking out at the end of each shift. (Helland Decl. Ex. I, Kozar Depo. ("Kozar Depo.") at 93–94, 96; Helland Decl. Ex. K, Campbell Depo. ("Campbell Depo.") at 9–10, 15–16.)

Defendant Adecco argues that Plaintiff's evidence is insufficient to establish numerosity because "evidence of *possible* membership is not evidence of *actual* numerosity existing in either of Plaintiff's proposed classes." (Adecco Opp'n at 25 (emphasis in original) (citing *Siles v. ILGWU Nat'l Ret. Fund,* 783 F.2d 923, 930 (9th Cir.1986)).) Plaintiffs provide evidence, however, that all 3,965 Adecco-furnished employees were required to go through security screening, and thus are all members of the proposed security line class. (Kozar Depo. at 93–94, 96; Campbell Depo. at 9–10, 15–16.) Accordingly, Plaintiffs have established numerosity of the proposed security line class.

In contrast, Plaintiffs provide no evidence as to how many of the 3,965 Adecco-furnished employees "were entitled to receive meal and/or rest periods," and thus fall within the definition of the proposed meal and rest period class. (*See* Mot. at 1 (limiting the class to employees "who were entitled to receive meal and/or rest periods").) Defendant Adecco admits, however, that all the employees it furnishes to Celestica are scheduled to work eight-hour shifts. (*See* Adecco Opp'n at 4–5; Kozar Depo. at 36.) Thus, all 3,965 of these employees would be members of the proposed meal and rest period class, because all were entitled to receive

meal and rest periods during their eight-hour shifts. *See* Cal. Lab.Code §§ 226.7, 512. Accordingly, Plaintiffs have established numerosity of the proposed meal and rest period class.

**B. Commonality**

■ Courts have construed Rule 23(a)(2)'s commonality requirement permissively. *Staton v. Boeing Co.*, 313 F.3d 447, 462 (9th Cir.2002). As the Ninth Circuit has explained:

> All questions of fact and law need not be common to satisfy the rule. The existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class.

*Id.* (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir.1998)).

■ Additionally, this Court has stated that "the commonality requirement is interpreted to require very little." *Paxil*, 212 F.R.D. at 549. "[F]or the commonality requirement to be met, there must only be one single issue common to the proposed class." *Haley*, 169 F.R.D. at 648.

**1. Security Line Class**

■ Here, Plaintiffs argue that the common legal question for the proposed security line class is whether employees are entitled to pay for the time they spend waiting in line for security, passing through security, and waiting in line to clock in or out. (Mot. at 11.) Indeed, Defendant Adecco concedes in its Opposition that the claims of the proposed security line class hinge on this legal issue. (*See* Adecco Opp'n at 19–23; *see also infra* at E.2 (explaining that this legal issue predominates over individual questions raised by the security line class' claims).)

Defendant Adecco argues there is no real question of law at issue in the security line claims, because time spent in a security line is not compensable as a matter of law. (*See* Adecco Opp'n at 19–23). In *Gorman v. Consolidated Edison Corp.*, plaintiffs sued under the Fair Labor Standards Act ("FLSA") for "payment of wages for the time it takes for security-related procedures at ingress to the plant, for suiting up, for some intervening steps, and for the same in reverse." 488 F.3d 586, 589 (2d Cir.2007). Like Plaintiffs here, the plaintiffs in *Gorman* "spen[t] between ten and thirty minutes a day passing through multiple layers of security and suiting up" at the beginning of their shifts. *Id.* at 591. The Second Circuit held that this time was not compensable under the FLSA because, while "indispensable," it was not "integral" to the employees' principal job activities. *Id.* at 593.

Similarly, in *Bonilla v. Baker Concrete Constr., Inc.*, plaintiffs who worked at an airport sued under the FLSA for compensation the time it took to get through airport security and from there to their job site each day. 487 F.3d 1340, 1341 (11th Cir.2007). The Eleventh Circuit agreed with the Second Circuit that time spent going through security was not "integral" to the employees' principal job activities and thus was not compensable under the FLSA. *Id.* at 1345.

■ Plaintiffs argue, however, that these cases are inapposite because they involve claims under the FLSA, while Plaintiffs assert claims under the California Labor Code. (Reply at 3–4.) Indeed, the California Supreme Court has expressly held that courts should *not* rely on interpretations of the FLSA to determine what is compensable under the California Labor Code. *Morillion v. Royal Packing Co.*, 22 Cal.4th 575, 588–94, 94 Cal.Rptr.2d 3, 995 P.2d 139 (2000) (concluding that "the federal statutory scheme, which differs substantially from the state scheme, should be given no deference").

In *Morillion*, plaintiff agricultural workers sued for compensation for time they spent waiting for employers' buses and riding those buses to and from the fields each day. *Id.* at 579, 94 Cal.Rptr.2d 3, 995 P.2d 139. The court held that such "compulsory travel time is compensable" under the California Labor Code, because the employees were required to take the buses and thus were "subject to the control of [their] employer." *Id.* at 585, 595, 94 Cal.Rptr.2d 3, 995 P.2d 139. Even time spent waiting for the buses was compensable. *Id.* at 587, 94 Cal.Rptr.2d 3, 995 P.2d 139.

The *Morillion* court distinguished time spent in an ordinary commute, or time spent on personal grooming required for a job, which are not compensable. *Id.* at 586, 94 Cal.Rptr.2d 3, 995 P.2d 139. The primary distinguishing factor is "the level of control [the employer] exercises by determining when, where, and how plaintiffs must travel." *Id.* The court explained,

> employees who commute to work on their own decide when to leave, which route to take to work, and which mode of transportation to use. By commuting on their own, employees may choose and may be able to run errands before work and to leave from work early for personal appointments.

*Id.* Despite their freedom to read or even sleep while waiting for or riding the buses, the *Morillion* employees were under the control of their employer during those periods, because they were not free to "use the time effectively for their own purposes." *Id.* at 586, 94 Cal.Rptr.2d 3, 995 P.2d 139.

Here, Plaintiffs argue that when they are in the security line, like the *Morillion* employees waiting for buses, they are under the control of their employer. (Reply at 4–6.) Indeed, Plaintiffs present evidence that they were not allowed to leave the premises after passing through security before the beginning of a shift, were told to stand in lines marked by tape on the floor while waiting to pass through security, and were at least occasionally disciplined by Defendants while in the security line. (*Id.* at 5 (citing Kozar Depo. at 41–42; Saenz Depo. at 32–33).)

For their argument that security line time is not compensable, Defendants cite only two cases involving California Labor Code claims: *Overton v. Walt Disney Co.* and *Cornn v. United Parcel Service, Inc.* Neither case, however, contradicts Plaintiffs' assertion that security line time is compensable under *Morillion*.

In *Overton v. Walt Disney Co.*, plaintiffs sought compensation for time spent parking and taking a shuttle to their jobs at Disneyland. *See* 136 Cal.App.4th 263, 266–68, 38 Cal.Rptr.3d 693 (2006). The court held that the plaintiffs' time on the shuttle buses was not compensable because, unlike in *Morillion*, Disney did not *require* its employees to

take its shuttle buses; instead, they could have "walked, biked, [taken] the Metrolink train, or [been] dropped off [or] picked up." *Id.* at 271 & n. 12, 38 Cal.Rptr.3d 693. Here, in contrast, Defendants *require* Plaintiffs to go through the security line before work. Accordingly, Plaintiffs' claim for compensation for time spent in Defendants' security line is consistent with the standard set in *Overton*.

In *Cornn*, plaintiffs sought compensation for, among other things, time they spent punching the time clock before a shift. *Cornn v. United Parcel Service, Inc.*, No. C03–2001 TEH, 2005 WL 2072091, at *4 (N.D.Cal.2005). Unlike Plaintiffs here, who contend they spend up to fifteen minutes in the security line before and after each shift (*see, e.g.,* Hernandez Decl. ¶¶ 8–13), the *Cornn* plaintiffs admitted that they spent only "a few seconds" punching in. *Cornn*, 2005 WL 2072091, at *4. The *Cornn* court found that this time was *de minimus* and thus not compensable. *Id.* The court, in dicta, commented that additionally Plaintiffs had cited no authority stating that time spent punching in is compensable. *Id.* In contrast, here Plaintiffs have cited a California Supreme Court case holding that time spent under the control of an employer is compensable. (*See* Reply at 3–5 (citing *Morillion*, 22 Cal.4th at 578, 583–84, 586, 94 Cal.Rptr.2d 3, 995 P.2d 139).) *Cornn* thus does not bar Plaintiffs' claims for compensation for security line time.

Unlike the plaintiffs in *Morillion*, however, Plaintiffs here are not required to appear at the security line at a specific time. Thus, the pre-shift security line requirement in this case may be more akin to time spent in an ordinary commute, where employees may choose to start earlier or later depending on their own judgment. The Court need not decide whether Plaintiffs' pre-shift time is compensable, because, as explained below, there is a common issue of law as to whether the post-shift security line time is compensable.

Unlike the time Plaintiffs spend in the security line before their shifts, they have no choice about when to arrive at the security

line at the end of the shift. Like the plaintiffs in *Morillion*, Plaintiffs are under the control of their employers while in the security line at the end of the shift: they cannot choose to leave the premises without going through the line, nor can they choose to run a personal errand before going through the line. *Cf. Morillion*, 22 Cal.4th at 586, 94 Cal.Rptr.2d 3, 995 P.2d 139 (explaining that pre- or post-shift time is not compensable when employees "may choose and may be able to run errands before work and to leave from work early for personal appointments").

Plaintiffs have thus established at least one question of law common to all members of the security line class: whether time spent in the security line at the end of a shift is compensable under the California Labor Code.

### 2. Meal and Rest Period Class

■ Plaintiffs argue there are common issues of fact for the proposed meal and rest period class. First, they allege that Defendant Adecco maintains a common corporate policy under which it has never paid a meal or rest period premium to any employee. (Mot. at 11–12 (citing Campbell Depo. at 45–46, 59).) Second, they allege that for portions of the class period, Defendant maintained a uniform policy of denying all employees their second thirty minute meal period when they worked ten hours or more. (*Id.* at 12 (citing Helland Decl. Ex. M, Saenz Depo. ("Saenz Depo") at 34–35).) Plaintiffs also offer their own depositions to show that they did not receive a second meal period after ten hours. (*Id.*) Finally, Plaintiffs argue there is a common question of fact as to whether Defendants provided employees with legally sufficient resting facilities. (*Id.* at 12–13.)

Plaintiffs cite to *Dukes v. Wal–Mart, Inc.* for their proposition that the Court can infer a corporate policy from anecdotal evidence such as that proffered by Plaintiffs in their depositions. (Mot. at 11 (citing *Dukes v. Wal–Mart, Inc.*, 509 F.3d 1168, 1183 (9th Cir.2007)).) In *Dukes*, however, the Ninth Circuit upheld the district court's finding of commonality based on Plaintiffs' showing of not only anecdotal evidence, but also direct

factual evidence, expert testimony, and statistical evidence of a corporate policy that affected all class members commonly. *Dukes*, 509 F.3d at 1178–82.

Indeed, the *Dukes* court implied that anecdotal evidence was not sufficient to prove commonality, but upheld the finding of commonality because "the district court did not state that this anecdotal evidence provided sufficient proof to *establish* commonality by itself, but rather noted that such evidence provides *support* for Plaintiffs' contention that commonality is present." *Id.* at 1182 (emphasis in original).

Here, Plaintiffs contend that, as in *Dukes*, there is more than mere anecdotal evidence of a common corporate policy of denying a second meal period. First, they provide statistical evidence that a review of "ten percent of the payroll records for the putative class ... [revealed] 4,716 instances in which employees worked ten hours or more in a day." (Helland Reply Decl. ¶ 10.)

Second, Plaintiffs provide declarations as evidence that when class members worked more than ten hours, they did not receive a second lunch break. For example, putative class member Reyes testified that "every time [he] had overtime and ... worked more than ten hours, [he] got a third break at 3:30, and it was always ten minutes," and that he did not "ever get a second lunch period." (Helland Decl. Ex. R, Reyes Depo. at 144–45.) Plaintiffs provide no evidence, however, as to how often Mr. Reyes worked more than ten hours. Other employees similarly aver that they never got a second lunch period. (*See* Helland Decl. Ex. P, Flores Depo. at 151; *see also id.* Ex. T, Holmes Decl. ¶ 8 (worked more than ten hours "on occasion"); *id.* Ex. U, Morales Decl. ¶ 8 (same); *id.* Ex. U, Simpkins Decl. ¶ 8 (same); *id.* Ex. V, Orozco Decl. ¶ 8 (same); *id.* Ex. Y, Espinoza Decl. ¶ 8 (same); *id.* Ex. BB, Ruedas Decl. ¶ 8 (same).)

Plaintiffs argue the testimony of Monica Saenz provides direct evidence of Defendants' alleged policy of not providing a second meal period after ten hours. (Mot. at 7.) Ms. Saenz, however, was not involved with deciding when meal and rest breaks oc-

curred. She testified that her job responsibilities solely consisted of processing payroll, "be[ing] there for the employees," and providing customer service to the client (Celestica). (Saenz Depo. at 12.) Indeed, when asked whether employees ever got a second meal break, or whether there was a policy of providing such a second meal break, Ms. Saenz testified "I don't know." (*Id.* at 34–35.) Accordingly, Ms. Saenz's testimony is insufficient to establish a common company policy of denying second meal periods.

Plaintiffs do, however, provide direct evidence that Defendant Adecco's representatives responsible for paying class members did not recall ever paying a premium for missed meal and rest periods. (*See* Campbell Depo. at 45–46.) Indeed, an Adecco supervisor responsible for adjusting paychecks for missed second meal periods did not recall adjusting paychecks for class members. (Helland Decl. Ex. L, Marez Depo. at 48–49.)

This direct evidence that no premium was paid for missed meal periods, combined with testimony that class members did miss meal periods when they worked more than ten hours and statistical evidence that class members worked more than ten hours in thousands of instances, is enough to show a "common core of salient facts." *See Staton,* 313 F.3d at 462. Like the *Dukes* plaintiffs, Plaintiffs here have shown not only anecdotal evidence, but also direct factual evidence, and statistical evidence from which the Court can infer a corporate policy that affected all class members commonly. *Cf. Dukes,* 509 F.3d at 1178–82. Accordingly, Plaintiffs have established commonality as to the meal and rest period class.

**C. Typicality**

■■■ To gauge typicality, a "court does not need to find that the claims of the purported class representative are identical to the claims of the other class members." *Haley,* 169 F.R.D. at 649. The Ninth Circuit in *Hanlon* further wrote that "[u]nder the rule's permissive standards, representative

claims are 'typical' if they are reasonably coextensive with those of absent class members; they need not be substantially identical." 150 F.3d at 1020. Additionally, the class representatives "must be able to pursue [their] claims under the same legal or remedial theories as the unrepresented class members." *Paxil,* 212 F.R.D. at 549.

■■■ While commonality requires only one unifying factual or legal question, typicality requires " 'that the claims of the class representatives be typical of those of the class' " and is achieved " 'when each member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability.' " *In re Paxil Litig.,* 212 F.R.D. 539, 550 (C.D.Cal.2003) (quoting *Armstrong v. Davis,* 275 F.3d 849, 868 (9th Cir.2001)).

■■■ Here, Plaintiffs' claims are typical of those of the security line class members because Plaintiffs were subject to the same security procedures as all class members. (*See* Mot. at 13–14.) Their claims are typical of the meal and rest period class because they, like other class members, allegedly were denied meal and rest period premiums, second meal breaks, and suitable resting facilities by Defendants. (Mot. at 14.)[2] Accordingly, Plaintiffs have established typicality as to both proposed classes.

**D. Adequacy**

■■■ Traditionally, courts have engaged in a two-part analysis to determine if the plaintiffs have met the requirements of Rule 23(a)(4):(1) the class representatives must not have interests antagonistic to the unnamed class members and (2) the representatives must be able to prosecute the action "vigorously through qualified counsel." *Lerwill v. Inflight Motion Pictures, Inc.,* 582 F.2d 507, 512 (9th Cir.1978).

**1. Named Class Members**

■■■ Plaintiffs argue that they are adequate representatives of the class. (Mot. at 14–15.) They have diligently participated in

---

**2.** Defendant Celestica argues that Plaintiffs, as Adecco employees, are not typical of Celestica employees. (Celestica Opp'n at 13.) This argument is moot after Plaintiffs' withdrawal of their request to include Celestica employees in the class definition. (*See* Reply at 1.)

the litigation and have no conflicts that would prevent them from representing the proposed classes. (Reyes Depo. at 192.) Defendant Adecco does not argue that named Plaintiffs or their counsel are inadequate, but refers to its argument that common issues do not predominate under Rule 23(b). (Adecco Opp'n at 25.) As employees of Adecco who were subject to the security line policy and the alleged meal and rest period violations, named Plaintiffs appear able to represent the security line and meal and rest period classes adequately.

Defendant Celestica argues that named Plaintiffs are inadequate because, as *former* employees of Adecco, they are not representative of *current* employees, and would not pursue vigorously remedies such as injunctive relief that would benefit current employees. (Celestica Opp'n at 15–16 (citing *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 626–27, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997)).) Celestica provides no evidence, however, to support its assertion that named Plaintiffs are all former, rather than current, employees. Moreover, Celestica admits that the proposed class members furnished by Adecco are all "temporary" employees, furnished to Celestica on a "temporary" basis. (Celestica Opp'n at 4.) The interests of such temporary employees, who may expect to become "former" employees, are not significantly different from the interests of former employees. Thus, even assuming Plaintiffs are not current employees, Plaintiffs could adequately represent the proposed classes.[3]

## 2. Qualified Counsel

 Adequate representation " 'depends on the qualifications of counsel for the representatives, an absence of antagonism, a sharing of interests between representatives and absentees, and the unlikelihood that the suit is collusive.' " *Paxil*, 212 F.R.D. at 550 (quoting *Crawford v. Honig*, 37 F.3d 485, 487 (9th Cir.1994)). Courts now determine the adequacy of counsel under Rule 23(g). *See,*

*e.g., Hill v. Merrill Gardens, L.L.C.*, 2005 WL 2465250, *3 (N.D.Ind.2005).

Rule 23(g) provides,

a court that certifies a class must appoint class counsel. In appointing class counsel, the court:

(A) must consider:

(i) the work counsel has done in identifying or investigating potential claims in the action;

(ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;

(iii) counsel's knowledge of the applicable law; and

(iv) the resources that counsel will commit to representing the class.

Fed.R.Civ.P. 23(g).

Here, Plaintiffs aver that their counsel consists of a qualified law firm with extensive experience in class action and wage and hour litigation. (Mot. at 15.) The firm employs twenty lawyers and has represented employees exclusively for the past fifteen years. (*Id.* (citing Helland Decl. ¶ 12).) It has represented over 25,000 employees in such cases and currently is counsel of record on over fifty class or collective action cases, most of which are wage and hour cases. (*Id.*) Plaintiffs' lead counsel has practiced law for twenty-five years. (*Id.* (citing Helland Decl. ¶ 13).)

Plaintiffs have demonstrated sufficiently that their counsel will represent the proposed classes adequately. Counsel has identified and investigated the claims in this action, has extensive experience handling class actions similar to this one, has demonstrated knowledge of the applicable law, and has adequate resources to represent the proposed classes.

---

**3.** Defendant Celestica also argues that several named Plaintiffs are antagonistic toward Celestica and its employees, and thus are inadequate to represent Celestica employees. (Opp'n at 16 (providing no authority for its assertion that Plaintiffs "distinguished themselves from perma-

nent Celestica employees" and seek "vengeance" against Celestica).) This argument is moot after Plaintiffs' withdrawal of their request for class certification as to Celestica employees. (*See* Reply at 1.)

**E. Whether Common Issues of Fact and Law Predominate**

■ In addition to meeting the above prerequisites for class certification under Rule 23(a), a plaintiff must satisfy one of the prongs of Rule 23(b) in order to maintain a class action. Where, as here, a plaintiff moves for class certification under Rule 23(b)(3), the plaintiff must prove that:

the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The matters pertinent to these findings include:

(A) the class members' interests in individually controlling the prosecution or defense of separate actions;

(B) the extent and nature of any litigation concerning the controversy already begun by or against class members;

(C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

(D) the likely difficulties in managing a class action.

Fed.R.Civ.P. 23(b).

**1. Meal and Rest Period Class**

Defendant Adecco cites *Lanzarone v. Guardsmark Holdings, Inc.* for its proposition that Plaintiffs cannot demonstrate that common questions predominate over the meal and rest period claims without producing "documents, clear corporate witness testimony, or other direct evidence showing that the company systematically violates meal and rest period laws ...." (Adecco Opp'n at 12 (citing *Lanzarone v. Guardsmark Holdings, Inc.*, No. CV06–1136 R (PLAx), 2006 WL 4393465, at *4 (C.D.Cal.2006)).) *Lanzarone*, however, does not require "clear corporate witness testimony," but only "testimony ... that the company systematically violates meal and rest period laws." *Lanzarone*, 2006 WL 4393465, at *4.

Here, Plaintiffs have provided Adecco's corporate representative's testimony that Adecco has never paid a meal or rest period premium to any employee. (*See* Campbell Depo. at 45–46, 59.) Plaintiffs argue the Court can infer Defendants had a systematic corporate policy of denying a second meal period from anecdotal evidence that Defendants uniformly failed to provide such a period. (Mot. at 17.)

Defendant Adecco argues, however, that an individualized factual determination will be required to decide if Plaintiffs were actually deprived of meal or rest periods and whether Adecco knew or should have known of the missed period. (Adecco Opp'n at 13.) For instance, Defendants point out that while Plaintiffs all aver in their depositions that they missed rest or meal periods, the reasons why Plaintiffs and other employees missed the breaks, and the number of periods they missed, differed. (Opp'n at 13 (citing Patterson Decl. Ex. 3, Santos Depo. at 65, 95; Patterson Decl. Ex. 4, Flores Depo. at 131–33, 141–45, 150; Patterson Decl. Ex. 1, Cervantez Depo. at 55, 109, 174–76, 178–80, 183–84, 219–220, 236, 263, 264; Patterson Decl. Ex. 2, Reyes Depo. at 108–109, 173; Patterson Decl. Ex. 8, Marez Depo. at 41–42; Patterson Decl. Ex. 9, Saenz Depo. at 39; Patterson Decl. Ex. 11, Palmerin Depo. at 32; Patterson Decl. Ex. 13, Darwin Depo. at 30).)

Plaintiffs counter that although they may have been denied meal or rest periods for different reasons, their claims all arise from Defendant's uniform and class-wide policies and procedures. (Mot. at 14 (citing *Dukes*, 509 F.3d at 1184 (claims need not be "substantially identical. Some degree of individuality is to be expected in all cases")).)

In *Brown v. Federal Express Corp.*, the court declined to certify a class alleging claims for meal and rest break violations, finding that individual issues predominated over common issues. *Brown v. Federal Express Corp.*, 249 F.R.D. 580, 586–87 (C.D.Cal. 2008). The court held that "Plaintiffs may prevail only if they demonstrate that [the defendant's] policies deprived them of those breaks. Any such showing will require substantial individualized fact finding." *Brown*, 249 F.R.D. at 586.

In *Brown*, however, unlike here, the proposed class consisted of drivers and couriers who worked out of disparate facilities throughout California with widely varying

job duties and schedules, and were subjected to different monitoring and expectations. *Id.* at 585–87. The court emphasized this variance of individual circumstance and noted that "Plaintiffs propose no method of common proof that would establish that [the defendant's] policies prevent drivers from taking required breaks, regardless of their individual circumstances." *Id.* at 587.

Here, Defendant Adecco argues that proposed meal and class period members have worked in approximately forty different job positions including administrative, clerical, production, assembly, shipping and receiving, and janitorial positions.[4] (Adecco Opp'n at 2.) Unlike in *Brown*, however, here all proposed class members worked in the same two buildings (Mot. at 1, 2; Helland Decl. ¶ 38 (explaining the buildings are only 2.7 miles apart), and were all scheduled to work eight-hour shifts (*see* Adecco Opp'n at 4–5; Kozar Depo. at 36.))

Moreover, Defendant Adecco admits that all the employees it furnished to Celestica were subject to the same policies with respect to meal and rest periods (*see* Adecco Opp'n at 5–6 (contending that "during a typical eight-hour shift, Adecco's associates at Fontana or SMI receive a 30–minute unpaid meal break and two paid 10–minute rest breaks," which is automatically deducted from all employees' time cards, "a second 30–minute meal period on shifts that exceed 10 hours," that is "manually deducted from associate time records," and that "[p]roduction lines (or "cells") at both Fontana and SMI take breaks and meal periods on a staggered basis to ensure sufficient seating space in the designated break areas").)

Indeed, Adecco admits to maintaining a written, uniform, meal break and rest period policy for all the employees it furnishes to Celestica, which it periodically distributes at Celestica's facilities. (*Id.* at 6.) Thus, whether or not the employees it furnishes to Celestica work in different job positions, their meal and rest breaks are subject to a common policy and thus are subject to common proof.

Ultimately, the key factual questions going to the claims of the proposed meal and rest break class are all subject to common proof. Plaintiffs' claim for denial of second meal periods hinges on whether there was a common corporate policy of granting or denying such periods. (*Compare* Saenz Depo. at 34–35 (testifying as to a policy of denying such periods) *with* Adecco Opp'n at 5–6 (contending there was a policy of granting such periods).) Plaintiffs' claim for failure to pay meal premiums depends on proof of a common corporate policy regarding payment of such premiums. (*See* Campbell Depo. at 45–46, 59 (stating that such premiums were never paid).) Finally, Plaintiffs' claim that Defendants did not provide adequate resting facilities is subject to common proof by a diagram of the facilities and the testimony of one or two witnesses familiar with the facilities. (*See, e.g.,* Celestica Opp'n at 6–7 (describing in detail the location of each rest facility, including one opened in 2006 and one opened in 2007).) Accordingly, questions of fact common to the proposed meal and rest period class members predominate over any questions affecting only individual members, and a class action is superior to other available methods for fairly and efficiently adjudicating their claims.

### 2. Security Line Class

Defendant Celestica argues that individual issues would predominate over the security line class's claims, because the court would have to determine the precise amount of time each class member spent in the line. (Celestica Opp'n at 19–20.) The precise amount of time each class member spent in line, however, goes only to damages, and can be established by class member estimates. *See Anderson v. Mt. Clemens Pottery Co.,* 328 U.S. 680, 687–88, 66 S.Ct. 1187, 90 L.Ed. 1515 (1946) (where an employer has failed to keep accurate time records, an employee may be awarded damages based on a reliable

---

**4.** Defendant Adecco provides no authority for its assertion that proposed class members worked at forty different positions including administrative, clerical, production, assembly, shipping and receiving, and janitorial positions. Defendant Adecco cites to its responses to Interrogatories, but it did not provide a copy of those responses with its Opposition. (*See* Adecco Opp'n at 2 (citing "Adecco USA, Inc.'s Response to Plaintiffs' Interrogatories, Set 1, p. 11–15").)

estimate of compensable time), *superseded on other grounds by statute as noted in Carter v. Panama Canal Co.,* 463 F.2d 1289 (D.C.Cir.1972); *Local Joint Executive Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.,* 244 F.3d 1152, 1163 (2001) (holding that where a common legal issue predominates, and damages for individual class members are subject to "a straightforward calculation of which days and how many hours they would have worked," Rule 23(b) is satisfied).

Indeed, Defendant Adecco admits there is one overarching question of law that affects the claims of the security line class: whether proposed class members are entitled to wages for time spent waiting in the security line. (*See* Adecco Opp'n at 19–23 (arguing that such time is not compensable, and that Plaintiffs' evidence regarding how much time they spent waiting in such lines is irrelevant because "putative class members are entitled to compensation only for the time they have spent *actually working*").) As Defendant Adecco points out in its extensive argument on this legal issue, Plaintiffs' security line claims hinge on whether such time is compensable. (*See id.*) Accordingly, this question of law common to the proposed security line class members predominates over any questions affecting only individual members, and a class action is superior to other available methods for fairly and efficiently adjudicating the claims of the proposed security line class.

## V. CONCLUSION

For the foregoing reasons, the Court GRANTS Plaintiffs' Motion for Class Certification of the following classes:

(a) The "security line class," defined as:

All current and former non-exempt employees of Defendants, paid by Defendant Adecco USA, Inc., who passed through security screening before, during or after their work shift, in Celestica's facility at 13473 Santa Ana Avenue, Fontana, California, since June 14, 2003.

(b) The "meal and rest period class," defined as:

All current and former non-exempt employees of Defendants, paid by Adecco USA, Inc. who worked at Celestica's facilities at 13473 Santa Ana Avenue, Fontana, California and 1392 North Sarah Place, Ontario, California, and who, at any time since June 14, 2003, were not provided a meal or rest period to which they were entitled.

The Court ORDERS Defendants to produce to Plaintiffs, within fourteen days of the date of this Order, a list of all persons who meet the class definitions as set forth above, including the person's name, address, telephone number, dates of employment with Defendants, and employee number. Within fourteen days of the date of this Order, the parties shall file a joint proposed notice.