Jose **CERVANTEZ, individually, on behalf of others similarly situated, and on behalf of the general public, Plaintiff,**

v.

**CELESTICA CORPORATION, Adecco USA, Inc., and Does 1–10 inclusive, Defendants.**

**Case No. EDCV 07–729–VAP.**

United States District Court, C.D. California.

May 6, 2009.

---

**1210**

Eric W. Cheung, Ervin Cohen and Jessup LLP, Beverly Hills, CA, James H. Kaster, Paul J. Lukas, Nichols Kaster and Anderson, Minneapolis, MN, Matthew C. Helland, Nichols Kaster LLP, San Francisco, CA, for Plaintiff.

David F. Faustman, Lynne M. Hook, Fox Rothschild, Los Angeles, CA, Lucinda Odell Lapoff, Harter Secrest and Emery, Rochester, NY, Jesse Elijah Maram Randolph, Julie E. Patterson, Bryan Cave LLP, Irvine, CA, for Defendants.

**ORDER (1) GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT, AND (2) DENYING DEFENDANT ADECCO'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

VIRGINIA A. PHILLIPS, District Judge.

The Motions for Summary Judgment brought by Plaintiffs and Defendant Adec-co USA, Inc. came before the Court for hearing on April 20, 2009. After reviewing and considering all papers filed in support of, and in opposition to, the Motion, as well as the arguments advanced by counsel at the hearing, the Court GRANTS IN PART and DENIES IN PART Plaintiffs' Motion and DENIES Defendant Adecco USA, Inc.'s Motion.

## I. BACKGROUND

Plaintiff Jose Cervantez filed a Complaint on June 15, 2007 on behalf of himself and others similarly situated, naming as Defendants Celestica Corporation and Adecco USA, Inc. On October 5, 2007, the Court granted Defendants' Motion to Strike the prayers for punitive damages in the Complaint.

On March 5, 2007, Plaintiffs Jose Cervantez, Rusty Reyes, George Santos, Maria Nguyen, and Marina Flores (collectively, "Plaintiffs") filed a Second Amended Complaint ("SAC") on behalf of themselves and others similarly situated, asserting five claims: (1) failure to pay overtime compensation in violation of California law; (2) waiting time penalties; (3) failure to provide accurate itemized wage statements; (4) failure to provide rest breaks and meal periods; and (5) unfair business practices.

Plaintiff filed a Motion to Certify Class on May 1, 2008. The Court granted the Motion on July 30, 2008 253 F.R.D. 562 (C.D.Cal.2008) and certified a "security line class" and "meal and rest period class."[1]

On October 6, 2008, Defendant Adecco USA Inc. filed a Motion for Partial Sum-

---

**1.** The "security line class" is defined as follows: "All current and former non-exempt employees of Defendants, paid by Defendant Adecco USA, Inc., who passed through securi-

mary Judgment ("Adecco Motion"), the Declaration of Julie E. Patterson ("Patterson Decl.") with several attached exhibits, and a "Statement of Uncontroverted Facts and Conclusions of Law" ("Adecco SUF"). On October 31, 2008, Plaintiffs filed Opposition ("Opp'n"), the Declaration of Matthew C. Helland ("Helland Decl.") with several exhibits attached, and a "Statement of Genuine Issues of Material Fact" ("Pls. SGI"). On November 14, 2008, Defendant Adecco USA Inc. filed a Reply.

On October 6, 2008, Plaintiffs filed a Motion for Partial Summary Judgment, the Declaration of Matthew C. Helland ("Helland Decl."), with several exhibits attached, the Declaration of Marina Flores ("Flores Decl."), the Declaration of David Echeverry ("Echeverry Decl."), and a "Proposed Statement of Uncontroverted Facts and Conclusions of Law" ("Pls. SUF").[2] On October 31, 2008, Defendant Adecco filed Opposition ("Adecco Oppn."), the supplemental Declaration of Julie E. Patterson ("Supp. Patterson Decl.") with several exhibits attached, and a "Statement of Genuine Issues of Material Fact" ("Adecco SGI"). On November 14, 2008, Plaintiffs filed a Reply.

On November 17, 2008, Defendant Celestica Corporation filed Opposition ("Celestica Opp'n") to Plaintiff's Motion, the Declaration of Lynne M. Hook ("Hook Decl.") with several exhibits attached, and a "Statement of Genuine Issues of Material Fact" ("Celestica SGI").

On November 21, 2008, the parties stipulated to continue the hearing on the cross-Motions for Summary Judgment from December 1, 2008 to February 23, 2009 because the parties agreed to submit to mediation on February 5, 2009. Following an unsuccessful mediation, the Court, *sua sponte*, moved the hearing date from February 23, 2009 to March 16, 2009. On February 25, 2009, the parties filed a joint stipulation, which the Court granted, to reschedule the hearing date to April 20, 2009.

## II. UNCONTROVERTED FACTS

The following material facts are supported adequately by admissible evidence and are uncontroverted. They are "admitted to exist without controversy" for the purposes of this Motion. *See* Local Rule 56–3.

Defendant Adecco USA, Inc. ("Defendant Adecco" or "Adecco") is a temporary staffing agency that provides employees for Defendant Celestica Corporation ("Defendant Celestica" or "Celestica"). (Adecco SUF ¶¶ 2–4.) Plaintiffs, paid by Adecco, are temporary workers assigned by Adecco to work at Celestica's Fontana facility. (Celestica SGI ¶¶ 44–45, 50.) On any given day during the class period, between one hundred and six hundred employees would work at Celestica's Fontana facility, in different departments and shifts. (Adecco SUF ¶¶ 11–12.)

Before Plaintiffs may enter the Celestica Fontana facility, they must pass through

---

ty screening before, during or after their work shift, in Celestica's facility at 13473 Santa Ana Avenue, Fontana, California, since June 14, 2003." (July 30 Order, 253 F.R.D. at 577.)

The "meal and rest period class" is defined as follows: "All current and former non-exempt employees of Defendants, paid by Adecco USA, Inc. who worked at Celestica's facilities at 13473 Santa Ana Avenue, Fontana,

California and 1392 North Sarah Place, Ontario, California, and who, at any time since June 14, 2003, were not provided a meal or rest period to which they were entitled." (*Id.*)

**2.** Plaintiffs filed a "Notice of Errata" and an amended document to one of the exhibits attached to the Helland Declaration on October 7, 2008 and October 9, 2008.

security screening, a measure required by Celestica. (Pls.' SUF ¶¶ 7–8; Adecco SGI ¶ 7; Celestica SGI ¶¶ 7–8.) After passing through the security screening, Plaintiffs clock in at one of the time clocks within the facility. (Pls.' SUF ¶ 9.) At the end of their shifts, Plaintiffs must clock out at one of the time clocks within the facility and pass through security screening, a measure required by Celestica, before they may leave the facility. (Pls.' SUF ¶ 10, 12; Celestica SGI ¶ 10, 12; Adecco SGI ¶ 10, 12; Adecco SUF ¶ 18.)

### III. DISPUTED FACTS

The parties dispute the following material facts: (1) the amount of time it takes Plaintiffs to pass through the security screening and punch in or out, before and after their shifts, *see* Pls.' SUF ¶¶ 11–12, 38–39, Adecco SGI ¶¶ 38, 39, 74–79, and Celestica SGI ¶¶ 38, 39; and (2) whether it would be difficult to change the time clock system to account for the time for which Plaintiffs seek compensation, *see* Pls.' SUF ¶ 18–24, Adecco SGI ¶¶ 18–24, 79, Adecco SUF ¶ 54, and Celestica SGI ¶¶ 18–24.

### IV. LEGAL STANDARD

A motion for summary judgment shall be granted when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The moving party must show that "under the governing law, there can be but one reasonable conclusion as to the verdict." *Anderson,* 477 U.S. at 250, 106 S.Ct. 2505.

Generally, the burden is on the moving party to demonstrate that it is entitled to summary judgment. *Margolis v. Ryan,* 140 F.3d 850, 852 (9th Cir.1998); *Retail Clerks Union Local 648 v. Hub Pharmacy, Inc.,* 707 F.2d 1030, 1033 (9th Cir.1983).

The moving party bears the initial burden of identifying the elements of the claim or defense and evidence that it believes demonstrates the absence of an issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

Where the non-moving party has the burden at trial, however, the moving party need not produce evidence negating or disproving every essential element of the nonmoving party's case. *Celotex,* 477 U.S. at 325, 106 S.Ct. 2548. Instead, the moving party's burden is met by pointing out that there is an absence of evidence supporting the nonmoving party's case. *Id.*

The burden then shifts to the non-moving party to show that there is a genuine issue of material fact that must be resolved at trial. Fed.R.Civ.P. 56(e); *Celotex,* 477 U.S. at 324, 106 S.Ct. 2548; *Anderson,* 477 U.S. at 256, 106 S.Ct. 2505. The non-moving party must make an affirmative showing on all matters placed in issue by the motion as to which it has the burden of proof at trial. *Celotex,* 477 U.S. at 322, 106 S.Ct. 2548; *Anderson,* 477 U.S. at 252, 106 S.Ct. 2505. *See also* William W. Schwarzer, A. Wallace Tashima & James M. Wagstaffe, *Federal Civil Procedure Before Trial* § 14:144.

### V. DISCUSSION

#### A. Plaintiffs' Motion for Summary Judgment

Plaintiff moves for summary judgment on the following issues: (1) Class Member should be compensated for their pre- and post-shift time spent clocking in and out and during security screenings because they are under the control of their employers, pursuant to *Morillion v. Royal Packing Co.,* 22 Cal.4th 575, 94 Cal.Rptr.2d 3, 995 P.2d 139 (2000); (2) Defendants' *de minimis* defense fails as a matter of law;

(3) Defendant Adecco is liable to Plaintiffs for its failure to provide accurate wage statements under Cal. Labor § 226; (4) Defendants are liable to Plaintiffs for their failure to pay all wages due upon termination of employment, pursuant to Cal. Labor § 201, 202, and 203; and (5) Defendant Celestica is an "employer" of Class Members. (*See* Mot. at 1.)

### 1. Celestica as Employer of Class Members

As an initial matter, the Court must determine whether or not Defendant Celestica is a proper defendant in this action. To be held liable for violations of the California Labor Code as an "employer," a party must "employ[ ] or exercise[ ] control over the wages, hours, or working conditions of any person." Cal.Code Regs. tit. 8 § 11010(2)(F). In other words, the Court must consider "the totality of the circumstances, reflecting upon the nature of the work relationship between the parties, and placing emphasis on the control exercised by the employer over the employee's performance of employment duties." *Bradley v. Cal. Dep't of Corr. & Rehab.*, 158 Cal.App.4th 1612, 1626, 71 Cal. Rptr.3d 222 (2008).[3]

Plaintiffs argue and present evidence that Celestica is their employer because it controls their work hours and working conditions. (*See* Mot. at 23–25); Pls.' SUF ¶¶ 25 (Adecco provides temporary employees to Celestica), 26 (Celestica has contractual right to approve employee base pay rate), 28 (Celestica determines Adecco employee schedules and work hours), 29 (Class Members work in Celestica warehouse and use Celestica equipment), 30 (Celestica facilities manager responsible for security, interior fencing, and providing "data lines for Class Members' time clocks"), 32 (Celestica supervisors required to supervise Class Members), 34–35 (Class Members required to comply with Celestica's production specification requirements). By showing Celestica controls Class Members' working conditions and work hours, under the *Bradley* and IWC standards, Plaintiffs meet their initial burden to show Celestica employs the Class Members. *See Celotex Corp.*, 477 U.S. at 323, 106 S.Ct. 2548.

The burden now shifts to Celestica to demonstrate a genuine issue of material fact that must be resolved at trial. *Celotex*, 477 U.S. at 324, 106 S.Ct. 2548; *Anderson*, 477 U.S. at 256, 106 S.Ct. 2505. In opposition to Plaintiffs' Motion, Celestica argues and presents evidence of the following (1) Adecco employs the Class Members, not Celestica; (2) Adecco employees believed only Adecco was their employer; and (3) Celestica did not access or control Adecco's timekeeping practices. (*See* Celestica Opp'n at 3–5; Celestica SGI

---

3. The parties dispute which definition of "employer" the Court should apply here. Plaintiffs argue Celestica's reliance on the definition outlined in *Reynolds v. Bement*, 36 Cal.4th 1075, 1085, 32 Cal.Rptr.3d 483, 116 P.3d 1162 (2005), is improper because that holding was limited to addressing individual liability under California Labor Code Section 1194. (*See* Reply at 4.) While Plaintiffs are correct that the holding in *Reynolds* was limited in such a way, the definition of "employer" applied in *Reynolds* is not. Here, the Court applies the IWC Wage Order definition of "employer," as cited in *Reynolds*, in conjunc-

tion with the definition announced in *Bradley* because both require the same analysis: under both standards, the Court must examine whether or not the party exercises control over a person, in terms of wages, hours, working conditions, or performance of employment duties. *See Reynolds*, 36 Cal.4th at 1085, 32 Cal.Rptr.3d 483, 116 P.3d 1162; *Bradstreet v. Wong*, 161 Cal.App.4th 1440, 1447, 75 Cal.Rptr.3d 253 (2008). The language used in *Reynolds* and *Bradstreet* to define "employer" is different, but is without distinction.

¶¶ 41 (Services agreement between Celestica and Adecco ("Services Agreement") states Adecco employees "shall not, for any purpose, be considered employees of Celestica"), 42 (Celestica not required to verify employment eligibility or identification of new employees under Services Agreement), 44 (Celestica not responsible for paying wages and did not determine wage rates of Adecco employees), 45 (Adecco employees never received paycheck from Celestica), 48 (some Class Members thought Celestica was not their employer), 49 (Adecco employees did not know anyone in Celestica's human resources department and always went to Adecco managers with any concerns).)

 First, Celestica points to the Services Agreement between itself and Adecco and the subjective perceptions of certain Class Members that Celestica was not their employer. Even viewing this evidence in the light most favorable to Celestica, neither the Services Agreement nor the Class Members' subjective perceptions as to the identity of their employer raise a genuine issue of material fact; they do not negate Plaintiffs' showing that Celestica controlled their work hours and working conditions.

Next, Celestica argues it is not Class Members' employer because it neither has access to nor controls Adecco's timekeeping practices. This argument also fails; whether or not Celestica exclusively controlled one aspect of Adecco's employment practices does not bear on the question of whether or not Celestica "employs or exercises control over the wages, hours, or working conditions of any person." Cal. Code Regs. § 11010(2)(F). Celestica views the inquiry too narrowly by focusing

on one purported aspect of its control, instead of arguing and presenting evidence that it does not meet the regulatory standard overall. Hence, Celestica fails to raise a triable issue of fact that it is not the Class Members' employer. Plaintiffs are entitled to summary adjudication that Celestica is one of their employers.

### 2. Control of the Employer

Plaintiffs argue and present evidence to show they were under the control of their employer when they waited in line to pass through security and clock in before their shifts and clock out and pass through security after their shifts.[4] (*See* Mot. at 7, 9–12 (pre-shift); Mot. at 7–9 (post-shift); Pls.' SUF ¶¶ 7, 9, 38 (pre-shift); Pls.' SUF ¶¶ 10–12, 16, 17, 38, 39 (post-shift).)

To meet their initial burden on this Motion, Plaintiffs must show, for the time they seek compensation, they were under the control of their employer, the standard announced in *Morillion v. Royal Packing Co.*, 22 Cal.4th 575, 94 Cal.Rptr.2d 3, 995 P.2d 139 (2000). *See Celotex Corp.*, 477 U.S. at 323, 106 S.Ct. 2548 (moving party bears the initial burden of identifying the elements of the claim or defense and evidence that it believes demonstrates the absence of an issue of material fact).

### a) Pre–Shift Time

Plaintiffs argue and present evidence they were under the control of their employer because Defendants required them to pass through security before their scheduled shifts, necessitating Plaintiffs arrive at the workplace early, wait in the security line, pass through security and into the building, and wait inside until their scheduled shift started. (*See* Mot. at

---

**4.** On this issue, the parties present arguments which the Court previously addressed, at least in part, in its July 30, 2008 Order granting Class Certification ("July 30 Order"). (*See* July 30 Order, 253 F.R.D. at 570–72.) The Court does not re-address them here and instead incorporates that Order by reference.

7, 9–12; Pls.' SUF ¶¶ 6–9.) According to Plaintiffs, out of fear of clocking in late and losing pay, they are forced to remain waiting in the security line and within the building after they have passed through security, restricting the activities in which Plaintiffs can engage during this uncompensated pre-shift period. (*Id.*)

■ Although the Court discussed *Morillion* and its progeny in its July 30 Order, it did not reach the merits of Plaintiffs' pre-shift claim. (*See* July 30 Order, 253 F.R.D. at 572.) Now at the summary judgment stage, the Court finds Plaintiffs meet their initial burden on this Motion. The Court noted earlier that Plaintiffs are "not required to appear at the security line at a specific time," but the evidence produced in support of this Motion amply demonstrates the similarity between this workplace conditions and those of the *Morillion* plaintiffs. (*Id.* at 571.)

In *Morillion*, the plaintiffs were not free to come and go during their pre-shift period because they were held captive within their employer's shuttle. 22 Cal.4th at 586–88, 94 Cal.Rptr.2d 3, 995 P.2d 139. Similarly, here, Plaintiffs must arrive at the Celestica facility early to pass through security, clock in, and be at their work station at the start of their scheduled shifts. (*See* Pls. SUF ¶¶ 6, 7, 9.)

■ While waiting in line and waiting inside the Celestica facility before their shift starts, Plaintiffs, as in *Morillion*, may not "use the time effectively for their own purposes." *Id.* at 586, 94 Cal.Rptr.2d 3, 995 P.2d 139 (internal citation and quotation omitted) ("during the bus ride, plaintiffs could not drop off their children at school, stop for breakfast before work, or run other errands requiring the use of a car. Plaintiffs were foreclosed from numerous activities in which they might oth-

erwise engage if they were permitted to travel to the fields by their own transportation."). Although here, Plaintiffs may engage in limited personal activities during this period, such as conversing with other co-workers socially or drinking a cup of coffee, "[a]llowing plaintiffs the[se] circumscribed activities ... does not affect, much less eliminate, the control [the employers] exercise[ ]...." *Id.* As the *Morillion* court pointed out, workers commonly listen to music, drink coffee, and converse with co-workers while working, and yet are not denied pay for doing so. *Id.* Plaintiffs' evidence, like that presented in *Morillion*, shows they were under the control of their employer during this pre-shift period.

Next, Plaintiffs argue Defendants' *de minimis* defense should fail as a matter of law. Plaintiffs argue the Court should not recognize the de *minimis* defense and, even if the Court applies the defense here, Plaintiffs present evidence that the amount of time spent in the pre-shift period is significant in the aggregate and not *de minimis*. (*See* Mot. at 12–13; Pls.' SUF ¶ 38.)

Plaintiffs have met their initial burden to show their pre-shift time is compensable and not *de minimis*. *See Celotex Corp.*, 477 U.S. at 323, 325, 106 S.Ct. 2548 (Defendants carry the burden of proof on this defense at trial, thus Plaintiffs meet their burden on summary judgment by pointing to the absence of evidence supporting the defense.).[5] The burden now shifts to Defendants to demonstrate a genuine issue of material fact that must be resolved at trial. *Celotex*, 477 U.S. at 324, 106 S.Ct. 2548; *Anderson*, 477 U.S. at 256, 106 S.Ct. 2505.

In their Opposition, Defendants argue they do not exercise the requisite level of control over Plaintiffs during the pre-shift period to make that time compensable.

5. The Court discusses the *de minimis* defense at length below.

(*See* Adecco Opp'n at 8–9; Celestica Opp'n at 15–17.) Defendants argue they require Plaintiffs to pass through security for safety reasons, but that they are free to engage in whatever activity they wish before their shift, either inside the Celestica facility or they are free to leave the facility and return before their shifts begin. (*Id.*)

Defendants fail to raise a triable issue of fact with this argument—despite their lack of specific rules or regulations of employees while they are in the security line or inside the facility but not yet "on the clock," Defendants limit the scope of activities in which Plaintiffs can engage, as in *Morillion.* Defendants' reliance on Plaintiffs' ability to exit the facility and re-enter during the pre-shift period is not persuasive nor is it a realistic option for Plaintiffs, who are docked pay if they clock in even one minute late. (*See* Pls. SUF ¶ 19.)

Defendants' next attempt to distinguish *Morillion* also fails. They argue they do not require Plaintiffs to arrive at work at any specific time, but rather allow Plaintiffs to make that decision. (*See* Adecco Opp'n at 8; Celestica Opp'n at 16.) First, Defendants require Plaintiffs to pass through the security screening before they may enter the Celestica facility. (*See* Pls. SUF ¶ 7.) This is an express means of control Defendants exercise over Plaintiffs. Furthermore, Plaintiffs necessarily must arrive at work early, even if not at a specific time, to pass through security, clock in, and walk to their work stations so they can start working at the beginning of their shift. If a plaintiff chooses to leave the security line or exit the facility, only to submit again to security screening, she runs the risk of being late and being

docked pay. This is a realistic consideration for an employee and shows Defendants control Plaintiffs from the moment they enter the security line.

At the hearing, counsel for Adecco urged the Court to apply *Vega v. Gasper*, 36 F.3d 417, 425 (5th Cir.1994), a case cited favorably by the *Morillion* court. In that case, an employer made transportation available for its employees to their work site, but did not require them to use this form of transportation. *Vega*, 36 F.3d at 425. There, the court found the time the employees spent during the commute in the employer's vehicles was not compensable, even though there was no reasonable alternative transportation for many of the employees.[6] *Id.* Applying *Vega* here, the distinguishing factor is obvious: employee choice. The *Vega* plaintiffs had the choice of whether or not to use the employer's transportation, even if the choice was not reasonable for some employees, given their individual circumstances. By contrast, Plaintiffs here have no choice; instead, they must submit to security screening and ensuing delay before every shift. As such, *Vega* is distinguishable factually.[7]

■ Defendants next argue Plaintiffs' claims should fail to the *de minimis* defense. In *Lindow v. United States*, 738 F.2d 1057, 1063 (9th Cir.1984), the Ninth Circuit discussed the factors to consider when evaluating FLSA claims challenged by a *de minimis* defense: "(1) the practical administrative difficulty of recording the additional time; (2) the aggregate amount of compensable time; and (3) the

---

6. Some *Vega* employees chose to drive themselves to their work site. *Id.* at 425.

7. The *Morillion* court found this to be a distinguishing factor as well. *See Morillion*, 22 Cal.4th at 589, n. 5, 94 Cal.Rptr.2d 3, 995

P.2d 139 ("we find the fact that the Vega employees were free to choose—rather than required—to ride their employer's buses to and from work, a dispositive, distinguishing fact.").

regularity of the additional work." Plaintiffs argue the *de minimis* defense is an outdated principle and relates only to the FLSA, not California law. (*See* Mot. at 12–13.) Defendants argue, in opposition, the Court should apply the *Lindow* test, following two other district courts that did so when deciding wage and hour actions under California law. (*See* Adecco Opp'n at 15 (citing *Alvarado v. Costco Wholesale Corp.,* 2008 WL 2477393, at *4 (N.D.Cal. 2008) and *Cornn v. United Parcel Service, Inc.,* 2005 WL 2072091, at *4 (N.D.Cal. 2005)[8]); Celestica Opp'n at 19–20 (incorporating and adopting Adecco's *de minimis* arguments).)

In *Alvarado,* the court applied the *Lindow* standard and granted the defendant summary judgment, finding the plaintiff's California claims for unpaid wages were *de minimis* and, therefore, not compensable. 2008 WL 2477393, at *3. There, the plaintiff regularly waited in the security line for a "couple of minutes" before she could leave her workplace. *Id.* The court also found it was difficult for the defendant to record this small fraction of time for every employee. *Id.* at *4 (repositioning time clock closer to exit door would create difficulties administratively because employees engaged in "noncompensable activities after the end of their shift but before leaving the warehouse, such as shopping, attend-

ing the restroom, socializing, walking time and other personal activities."). Lastly, the court found there was no evidence that the post-shift wait time occurred regularly. *Id.* Based on that showing under the *Lindow* factors, the court found the plaintiff's claims for unpaid wages were *de minimis* and not compensable.

Finding the *Alvarado* reasoning persuasive, the Court applies the *Lindow* test here.[9] As to the first factor, Defendants present disputed evidence to show it would be difficult and expensive to capture and compensate Plaintiffs for their pre-shift time spent waiting in line to pass through security and clock in. (*See* Adecco Opp'n at 17–18 ("If Adecco were required to account for each second of time associates spend passing through security or clocking in or out, it would have to impose substantial restrictions on associates with respect to the time they could arrive at or leave Celestica's Fontana facility, as well as their activities while present on the premises. . . ."); Celestica Opp'n at 19–20 (adopting and incorporating Adecco's *de minimis* argument); Adecco SGI ¶¶ 18–24, 79; Celestica SGI ¶¶ 18–24; *cf.* Mot. at 14 ("Defendants posses[s] the technology to record the additional time down to the hundredth of the hour; there is no administrative difficulty in recording the time."); Pls.' SUF ¶ 18–24.).

**8.** The Court discussed the *Cornn* decision in its July 30 Order. (*See* July 30 Order, 253 F.R.D. at 571.) In *Cornn,* the court applied the *de minimis* standard to plaintiffs' claims for compensation for, among other things, time they spent punching the time clock before a shift. *Cornn,* 2005 WL 2072091, at *4. There, the plaintiffs admitted that they spent only "a few seconds" punching in; the court found this time was *de minimis* and thus not compensable. *Id.* Furthermore, the court noted the plaintiffs cited no authority to show their time spent punching in was compensable. *Id.*

In *Cornn,* however, the court did not apply the *Lindow* factors, but rather the de minimis

standard contained in the California Department of Labor Standards and Enforcement Policies and Interpretations Manual Section 47.2.1.1. As the parties do not argue that standard should be applied here, the Court instead limits its review of Defendants' *de minimis* argument to whether or not the Court should apply the *Lindow* factors.

**9.** The Court does not address the third *Lindow* factor because it is not in dispute; the parties agree the Class Members must pass through security at the beginning of each shift, satisfying the regularity requirement.

As to the second factor, Defendants present disputed evidence that some Plaintiffs spend as little as one minute passing through security before their shift starts. (*See* Adecco SGI ¶¶ 38, 39, 74–79; Celestica SGI ¶¶ 38, 39; *cf.* Pls.'s SUF ¶¶ 11–12, 38, 39.)

Defendants do not raise a triable issue of fact that Plaintiffs are not under their control during the pre-shift period, but they do raise a triable issue of fact that Plaintiffs' claim for pre-shift compensation is *de minimis* and not compensable. Accordingly, the Court denies Plaintiffs summary judgment on this claim.

### b) Post–Shift Time

Plaintiffs move for summary judgment that their post-shift time is compensable. Plaintiffs present evidence to show they are forced to wait in and pass through the security line after clocking out, are subject to "counseling" if they move ahead of a coworker in line, and may not exit the facility before passing through security. (*See* Pls.' SUF ¶¶ 10–12, 16–17, 39.) As the Court stated in its July 30 Order, Plaintiffs "have no choice about when to arrive at the security line at the end of the shift. Like the plaintiffs in *Morillion,* Plaintiffs are under the control of their employers while in the security line at the end of the shift: they cannot choose to leave the premises without going through the line, nor can they choose to run a personal errand before going through the line. *Cf. Morillion,* 22 Cal.4th at 586, 94 Cal.Rptr.2d 3, 995 P.2d 139 (explaining that pre- or post-shift time is not compensable when employees "may choose and may be able to run errands before work and to leave from work early for personal

appointments")." (July 30 Order, 253 F.R.D. at 571–72.)

Plaintiffs also argue Defendants' *de minimis* defense fails as a matter of law. Plaintiffs present evidence that they spend at least six minutes each day in security screening lines and as much as twenty minutes at the end of a shift to clear security. (Pls. SUF ¶¶ 38, 39.) Plaintiffs have met their initial burden to show their post-shift time is compensable and not *de minimis. See Celotex Corp.,* 477 U.S. at 323, 325, 106 S.Ct. 2548 (Defendants carry the burden of proof on this defense at trial, thus Plaintiffs meet their burden on summary judgment by pointing to the absence of evidence supporting the defense.).[10] The burden now shifts to Defendants to demonstrate a genuine issue of material fact that must be resolved at trial. *Celotex,* 477 U.S. at 324, 106 S.Ct. 2548; *Anderson,* 477 U.S. at 256, 106 S.Ct. 2505.

In their Opposition, Defendants argue (1) they do not control their employees' post-shift activities; and (2) Plaintiffs' claims fail under the *de minimis* defense.[11]

█ On Defendants' first point, they present evidence showing their employees are free to engage in whatever activity they wish after they have clocked out and before they exit through security. (*See* Celestica Opp'n at 17–19 (citing Nguyen Dep. 116:20–22 to show Class Members "have access to break rooms, restrooms, vending machines, and can partake in other activities at the worksite after clocking out but prior to leaving"); Adecco Opp'n at 9–10; Adecco SGI ¶ 74 (showing that many Class Members choose to use the restroom, pick up their lunch, socialize with co-

---

10. The Court discusses the *de minimis* defense in detail below.

11. Celestica also argues Plaintiffs have not shown Celestica employs the Class Members.

As discussed above, the Court has granted summary judgment on this issue that Celestica employs the Class Members.

workers, etc., after clocking out and before entering the security line)).

This evidence is insufficient to distinguish our case from *Morillion.* Celestica argues that the employees here are confined to a factory building between clocking out and entering the security line, whereas the plaintiffs in *Morillion* were confined to a shuttle. (Celestica Opp'n at 18–19.) According to Celestica, the confines of a factory building allow the class members to engage in many more activities than would a moving shuttle, as in *Morillion.* (*Id.*) This slight difference where the employees are confined is unimportant; Defendants confine their employees to the Celestica facility and their activities are restricted as a result. In other words, the class members are under the control of their employer during this post-shift period. *Morillion,* 22 Cal.4th at 586, 94 Cal.Rptr.2d 3, 995 P.2d 139.

Adecco urges the Court to treat Class Members as analogous to "long-distance commuters, who are free to decide it suits them best to wait for freeway traffic to clear by engaging in various personal activities in the vicinity of their workplace instead of taking the freeway during the middle of rush hour." (Adecco Opp'n at 9–10.) The long-distance commuter analogy is inapposite. Long-distance commuters have the choice of when to leave their place of work. Here, Class Members may choose to wait for the security line to clear before attempting to pass through it themselves, but, no matter when Class Members choose to do so, they must first pass through security before they are free to leave the facility. Thus, long-distance commuters choose when to leave their place of employment; that choice is not in the hands of Plaintiffs here.

■ Defendants next argue their *de minimis* defense bars Plaintiffs' claim. As the Court applied the *Lindow* factors to Plaintiffs' pre-shift claim, it applies them here as well.[12] As to the first factor, Defendants present disputed evidence that it would be difficult to capture and compensate Plaintiffs for their post-shift time spent clocking out and waiting to pass through security to exit the building. (*See* Adecco Opp'n at 17–18 ("If Adecco were required to account for each second of time associates spend passing through security or clocking in or out, it would have to impose substantial restrictions on associates with respect to the time they could arrive at or leave Celestica's Fontana facility, as well as their activities while present on the premises. . . ."); Celestica Opp'n at 19–20 (adopting and incorporating Adecco's *de minimis* argument); Adecco SGI ¶¶ 18–24, 79; Celestica SGI ¶¶ 18–24; *cf.* Pls.' SUF ¶ 18–24.)

As to the second factor, Defendants present evidence to show Plaintiffs have spent as little as a minute passing through security at the end of their shift. (*See* Adecco SGI ¶¶ 38, 39, 74–79; Celestica SGI ¶¶ 38, 39; *cf.* Pls.'s SUF ¶¶ 11, 38, 39.)

While Defendants do not raise a triable issue of fact that Plaintiffs are under their control during the post-shift period, Defendants raise a triable issue of fact that Plaintiffs' claim for post-shift compensation is *de minimis* and therefore not compensable. Accordingly, the Court denies Plaintiffs summary judgment on this claim.

### 3. Provision of Wage Statements

Plaintiffs move for summary judgment on their claim that Defendant Adecco's wage statements violate California Labor

---

**12.** The Court does not address the third *Lindow* factor because it is not in dispute; the parties agree the Class Members always must clock out and pass through security at the end of *each* shift, satisfying the regularity requirement. (*See* Pls.' SUF ¶¶ 7, 12.)

Code Section 226(a) ("Section 226(a)").[13] Section 226(a) requires employers to furnish to their employees written, accurate, and itemized wage statements. Any employee "suffering injury as a result of a knowing and intentional failure by an employer to comply with subdivision (a) is entitled to recover [monetary damages]" of fifty dollars for the initial pay period in which a violation occurred, one hundred dollars per employee for each subsequent violation, not to exceed an aggregate penalty of four thousand dollars, plus reasonable attorneys' fees. Cal. Lab.Code § 226(e).

Specifically, Plaintiffs argue Adecco's wage statements are defective for two reasons: (1) they do not incorporate the time its employees spend working due to "grace periods" built into the time clock system; and (2) they fail to reflect the time employees spend during their pre- and post-shift periods waiting in line to pass through security and to clock in or out. (Mot. at 16–20.) Plaintiffs present undisputed evidence that Adecco does not record all of its employees' work time. Adecco's timeclocks are set so that, if an employee clocks in before her shift or clocks out after her shift, the timeclock records that as the employee clocking out exactly at the beginning or end of her shift, even if she actually clocks in within a half hour early or clocks out within fifteen minutes after the end of the shift. (*See* Pls.' SUF ¶ 18.) Thus, Plaintiffs argue, Adecco's wage statements do not reflect accurately the amount of time their employees work and for which they should be compensated. (*See* Mot. at 16–20.)

Plaintiffs argue they were harmed by this system because Adecco has "prevent-ed them from knowing the actual number of hours they worked and the actual amount of money they are owed." (Mot. at 18 (citing *Wang v. Chinese Daily News, Inc.,* 435 F.Supp.2d 1042, 1050 (C.D.Cal. 2006)).) Also, Plaintiffs argue, Adecco's violation is "knowing and intentional" because Adecco deliberately set up its system to incorporate the grace periods and did not locate time clocks near the building exit, such that employees could clock out after they pass through the security screening. (*See* Mot. at 17–18.) Finally, Plaintiffs argue Adecco's wage statements do not include Adecco's legal name and address, in violation of Section 226(a).[14] (*See* Mot. at 17.)

Plaintiffs meet their initial burden to show Adecco's wage statements are inaccurate and violate Section 226(a) because of the "grace periods" built into the timeclock system and because the pre- and post-shift periods, during which the employees are under the control of the employer, are not reflected in the employees' wage statements. *See Celotex Corp.,* 477 U.S. at 323, 106 S.Ct. 2548. The burden now shifts to Adecco to demonstrate a genuine issue of material fact that must be resolved at trial. *Celotex,* 477 U.S. at 324, 106 S.Ct. 2548; *Anderson,* 477 U.S. at 256, 106 S.Ct. 2505.

■ In opposition to Plaintiffs' Motion, Adecco argues: (1) its wage statements are accurate and reflect payment to employees for time actually worked; and (2) even assuming Adecco violated Section 226(a), such violation was not knowing or intentional and Plaintiffs cannot show injury arising from the violation.[15]

---

**13.** Plaintiffs seek liability on this claim only against Defendant Adecco. (*See* Mot. at 17, n. 22.)

**14.** The Court does not consider this argument, as Plaintiffs do not cite supporting evidence for the contention.

**15.** The Court does not reach Adecco's second argument, based on the Court's determination

First, Adecco presents evidence showing its wage statements do, in fact, comply with Section 226(a). (*See* Adecco SGI ¶¶ 80, 81 (Adecco paychecks and direct deposit statements contain the following information: (1) Adecco's full and abbreviated name; (2) address of Adecco's location where employee worked; (3) gross wages earned by employee; (4) total hours worked by employee; (5) legally-authorized deductions; (6) dates of pay period for which employee paid; (7) employee's name and corresponding Adecco identification number; (8) employee's hourly rates and number of hours worked at each hourly rate.).) This evidence shows Adecco's wage statements comply with the technical requirements of Section 226(a), assuming the time reflected on the wage statements is accurate.

As to the accuracy of the time on the wage statements, Adecco also presents evidence that it pays its employees for the time actually worked, i.e., if an employee works beyond her scheduled shift, but that time is not reflected because of the "grace period" system, then, if Adecco's client— Celestica, in this case—notifies Adecco's on-site team that the additional time should be paid, Adecco supervisors will alter the employee's hours worked to reflect the additional time. (*See* Adecco SGI ¶ 19.) Adecco also presents evidence that pre- and post-shift time spent by employees at the facility is not time during which the employees are actually working. (*See id.* at ¶ 74.)

The latter argument is not well-taken, as the Court has already found Plaintiffs are under the control of their employers, Adecco and Celestica, during their pre-and post-shift periods. As to the former contention, while this evidence tends to show Adecco has procedures to account for flaws in its "grace period" system, it does not show how it pays its employees for all the time during which they are under their employer's control, namely the post-shift period spent waiting to pass through the security screening.

Defendants, however, as discussed above, have raised a triable issue of fact whether the pre- and post-shift time at issue is *de minimis* and not compensable. Hence, Adecco raises a triable issue of fact that it has not violated Section 226(a); the outcome of this claim at trial directly depends on the determination of whether or not Plaintiffs' pre- and post-shift time is compensable. *Celotex*, 477 U.S. at 324, 106 S.Ct. 2548; *Anderson*, 477 U.S. at 256, 106 S.Ct. 2505. Accordingly, the Court denies Plaintiffs summary judgment on this claim.

### 4. Payment of Wages Due Upon Discharge

█ Plaintiffs seek summary judgment that Defendants violated California Labor Code Section 203 ("Section 203") by failing to provide final, accurate wages to employees upon their discharge. (*See* Mot. at 20–21.) Section 203 provides penalties against employers for willful failure to pay an employee's final wages. *See* Cal. Lab. Code § 203. Although it seems unlikely, at least, that no employee was discharged or quit during the class period, Plaintiffs present no evidence of Defendants' violation. As such, Plaintiffs cannot meet their initial burden and the Court denies summary judgment on this claim. *See Celotex Corp.*, 477 U.S. at 323, 106 S.Ct. 2548.

### B. Defendant Adecco's Motion for Summary Judgment

Adecco moves for summary judgment on the following grounds: (1) Plaintiffs' pre-

of the first argument.

shift activities are not compensable; (2) the *de minimis* defense is recognized under California law;[16] (3) Plaintiffs' pre-shift activities are *de minimis* as a matter of law; and (3) Adecco's scheduling is a lawful timekeeping practice. (*See* Mot.)

### 1. Pre–Shift Time

Adecco argues and presents evidence to show: (1) Plaintiffs' pre-shift compensation claim should fail because Plaintiffs are not under the control of Adecco during that time; and (2) the pre-shift time for which Plaintiffs seek compensation is *de minimis* as a matter of law. (*See* Mot.)

As to Adecco's first argument, Adecco presents evidence that Plaintiffs arrive at the Celestica facility at "various different times, which will depend on personal circumstances, necessity, or preference;" "if an associate does arrive early, they are free to—and do—use this time as they choose, and are not prohibited from leaving the premises." (Mot. at 9, 10; Adecco SUF ¶¶ 44–45, 47–48.) Relying on *Morillion*, Adecco argues Plaintiffs are not under its control during the pre-shift period, as they are free to leave the premises and engage in any personal activities; they are not required to stay inside the Celestica facility during the pre-shift period because they can leave at any time, although they must pass through security before they may re-enter. (*See* Mot. at 9–10; Adecco SUF ¶ 48.) As to Adecco's second argument, Adecco presents evidence that, for many of its employees, the time it takes them to pass through security and clock in is *de minimis,* as a matter of law. (*See* Adecco SUF ¶ 49–52.)

Adecco cannot meet its initial burden on this claim because the Court has already found, under *Morillion,* that Plaintiffs are

under its control during the pre-shift period at issue. Accordingly, the Court denies Adecco's Motion on this claim.

### 2. Timekeeping Practice

Adecco also seeks summary adjudication that its timekeeping practices are lawful because it pays its employees for time actually worked and its clients prefer the system, based on the realities of the manufacturing industry. (*See* Mot. at 20–24.) As Plaintiffs argue in Opposition, Adecco misunderstands the standard set by *Morillion:* if an employee is under the control of her employer, whether or not working at the time, the employee must be compensated for that time. *See Morillion,* 22 Cal.4th at 582, 94 Cal.Rptr.2d 3, 995 P.2d 139 ("employee who is subject to an employer's control does not have to be working during that time to be compensated."). This case centers on the question of the time, if any, outside of Plaintiffs' scheduled shifts, for which Adecco must compensate Plaintiffs; therefore, the question here is not whether Adecco paid Plaintiffs for time worked or if their clients preferred this timekeeping method, thus rendering the timekeeping practice lawful, but rather whether or not Adecco paid Plaintiffs for all time for which they were under Adecco's control.

As Adecco has not shown its timekeeping practice compensates Plaintiffs for all time for which Plaintiffs were under Adecco's control, Adecco cannot meet its initial burden on this issue and the Court denies Adecco summary judgment. *See Celotex Corp.,* 477 U.S. at 323, 106 S.Ct. 2548.

### VI. CONCLUSION

For the foregoing reasons, the Court DENIES Defendant Adecco's Motion in

---

**16.** As the Court has applied the *de minimis* defense with respect to Plaintiffs' Motion,

above, it does not re-address this issue here.

full and GRANTS IN PART AND DE-NIES IN PART Plaintiffs' Motion as follows:

1. The Court GRANTS Plaintiffs' Motion as to the claim that Celestica is a joint employer of Plaintiffs.

2. The Court DENIES Plaintiffs' Motion as to the claims for pre- and post-shift compensation because, although Plaintiffs have shown they are under the control of their employers during these times, Defendants raise a triable issue of fact that the time in question is *de minimis* and not compensable.

3. The Court DENIES Plaintiffs' Motion as to the claim for provision of accurate wage statements.

4. The Court DENIES Plaintiffs' Motion as to the claim for payment of wages due upon discharge.